Scott Wayne ROE and Dale Klyn, Plaintiffs,

v.

Officer Mark L. MILLIGAN, and Sgt. Chris Logan, of the Ottumwa Police Department, in their personal and official capacities; The Ottumwa Police Department; and Alan Monroe Wilson, Wayne County Attorney, in his personal and official capacities, Defendants,

State of Iowa, Intervenor.

No. 4:06–cv–00300.

United States District Court,
S.D. Iowa,
Central Division.

March 27, 2007.

Randall C. Wilson, Des Moines, IA, for Plaintiffs.

Gregory A. Witke, Bradshaw Fowler Proctor & Fairgrove, Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, for Defendants.

Mark Hunacek, Ames, IA, Thomas J. Miller, Attorney General, Jeffrey C. Peterzalek, Assistant Attorney General, Des Moines, IA, for Intervenor.

ORDER ON PLAINTIFFS' MOTION
FOR SUMMARY ADJUDICATION
OF CONSTITUTIONAL CLAIMS

PRATT, Chief District Judge.

Before the Court is Plaintiffs, Scott Wayne Roe and Dale Klyn's ("Roe" and

"Klyn") Motion for Summary Adjudication of Constitutional Claims, filed on December 5, 2006. Clerk's No. 17. On December 14, 2006, intervenor, the State of Iowa, filed a Motion for Partial Summary Judgment and Resistance to Plaintiffs' Motion for Summary Judgment [1] (Clerk's No. 19), to which all Defendants join. *See* Clerk's Nos. 20, 29. On January 8, 2007, Plaintiffs filed a reply. Clerk's No. 23. The matter is fully submitted. For the reasons discussed below, Plaintiffs' motion is DENIED as to their First Amendment challenge, and GRANTED as to their Fourteenth Amendment challenge.

## I. FACTS

### A. *Scott Wayne Roe*

The facts of this case are not in dispute. On June 4, 2006, Plaintiff Roe was engaged in a protest on his property. On his front lawn area, Roe displayed a United States flag in an inverted position [2] with the phrase "CORRUPTION OF BLOOD" in block letters written on it. [3] Underneath the inverted flag, held up by a pole, Roe placed a life-size cardboard cut-out picture of a police officer. *See* Pls.' App. at D2 (re-enacted picture of protest). Roe's display was intended as "a protest of the ordinances that were being passed by the City of Ottumwa, Iowa and the manner in which they were being enforced." Pls.' Statement of Material Facts ¶ 5. Officer Mark Milligan ("Milligan") and Sergeant Chris Logan ("Logan") arrived at the scene after one of Roe's neighbors called the police to complain. After an extended discussion with Roe, Officer Milligan and Sergeant Logan required "Roe to remove the flag under threat of physical arrest." *Id.* ¶ 6. Roe removed the flag in response. Thereafter, Roe received a citation for violation of Iowa Code section 718A.1, which prohibits flag desecration. Roe was tried in the Iowa District Court in and for Wapello County on September 22, 2006. On November 30, 2006, Magistrate Kevin Maughan held that Iowa Code section 718A.1 was unconstitutional as applied to the facts of Roe's case, found Roe not guilty, and dismissed the matter.

### B. *Dale Klyn*

Elsewhere in Iowa, in Wayne County, Plaintiff Klyn began flying his flag upside-down to signify distress both for what he considered an unfair loss in a bankruptcy proceeding, and in support of a campaign for mental health care services for military veterans. On July 7, 2006, Klyn received a criminal complaint in the mail. The com-

---

1. The Court believes that based on the pleadings and the record before it, the State of Iowa's motion, although captioned as a motion for partial summary judgment *and* a resistance (Clerk's No. 19), is in fact just a resistance to Plaintiffs' motion for summary adjudication. The State of Iowa's arguments made in its motion appear to counter Plaintiffs' arguments made in their opening brief, and the State of Iowa did not file a statement of undisputed material facts or an appendix in support of its own motion for partial summary judgment. *See* L.R. 56.1(a). Accordingly, the Court will treat the State of Iowa's motion as a resistance to Plaintiffs' motion for summary adjudication. To the extent that the State of Iowa's motion (Clerk's No. 19) was intended to be a separate motion for partial summary judgment, that motion is DENIED as moot.

2. An inverted flag, with the union down, by law is considered a signal of dire distress in instances of extreme danger to life or property. *See* 4 U.S.C. § 8(a) (2007).

3. Roe is member of a band named "Corruption of Blood," and the flag at issue is used as a backdrop in band performances. The name was taken from the Constitution, Article III, section 3, clause 2, which refers to the abusive British and colonial practice of destroying the rights of kin to inherit from an accused traitor. Pls.' Statement of Material Facts ¶ 3.

plaint charged Klyn with disorderly conduct, specifically:

> DISORDERLY CONDUCT, in violation of Iowa Code Section 723.4(6) ... in that ... [he] on the 4th day of July, 2006, in Wayne County, did knowingly and publicly use the flag of the United States in a disrespectful manner by flying it upside down with the intent or reasonable expectation that such use will encourage or provoke another to commit a public offense.

*Id.* ¶ 30. Trial was set for August 30, 2006, in the Iowa District Court in and for Wayne County. On August 29, 2006, one day before trial, Alan Monroe Wilson ("Wilson"), the Wayne County Attorney, dismissed the criminal complaint against Klyn.[4]

## II. RELEVANT STATUTES

718A.1 Desecration of flag or insignia. Any person who in any manner, for exhibition or display, shall place or cause to be placed, any word, figure, mark, picture, design, drawing, or any advertisement of any nature, upon any flag, standard, color, ensign, shield, or other insignia of the United States, or upon any flag, ensign, great seal, or other insignia of this state, or shall expose or cause to be exposed to public view, any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state, upon which shall have been printed, painted, or otherwise placed, or to which shall be attached, appended, affixed, or annexed, any word, figure, mark, picture, design, or drawing, or any advertisement of any nature, or who shall expose to public view, manufacture, sell, expose for sale, give away, or have in possession for sale, or to give away, or for use for any purpose any article or substance, being an article of merchandise or a receptacle of merchandise or article or thing for carrying or transporting merchandise, upon which shall have been printed, painted, attached or otherwise placed, a representation of any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state, to advertise, call attention to, decorate, mark, or distinguish the article or substance on which so placed, or who shall publicly mutilate, deface, defile or defy, trample upon, cast contempt upon, satirize, deride or burlesque, either by words or act, such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state, or who shall, for any purpose, place such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state, upon the ground or where the same may be trod upon, shall be deemed guilty of a simple misdemeanor.

Iowa Code § 718A.1 (2006) (hereinafter "flag desecration statute").[5] 723.4 Disorderly conduct.

---

4. Wilson was also the individual who swore to the information in Klyn's criminal complaint.

5. Flag, standard, color, ensign, shield, or other insignia shall include:

> [A]ny flag, standard, color, ensign, shield, or other insignia of the United States [or this state], or any picture or representation of any of them, made of any substance or represented on any substance, and of any size, evidently purporting to be any such flag, standard, color, insignia, shield, or other insignia of the United States of America, [or this state], or a picture or a representation of any of them.

*See* Iowa Code §§ 718A.3, 718.A.4.

A person commits a simple misdemeanor when the person does any of the following:

. . .

6. Knowingly and publicly uses the flag of the United States in such a manner as to show disrespect for the flag as a symbol of the United States, with the intent or reasonable expectation that such use will provoke or encourage another to commit a public offense.

Iowa Code § 723.4(6) (hereinafter "flag misuse statute").

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy. . . ." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not " 'to cut litigants off from their right of trial by jury if they really have issues to try,' " *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving par-

ty must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### IV. LAW AND ANALYSIS

#### A. *Background*

This Court has previously explained:

The Constitution of the United States provides the framework for American government and is the highest law of the land. *See Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177–78, 2 L.Ed. 60 (1803); *see generally* David P. Currie, *The Constitution of the United States: A Primer for the People* (1988). All government officers, including judges, have sworn to uphold it. *See* U.S. Const. art. VI, cl. 3. And while citizens elect representatives to the legislature at the state and federal level to enact laws that reflect the public's opinions on various issues, just because a law is

enacted by the majority, it is not stamped with *constitutional* legitimacy. "In the United States the Constitution governs the legislator as much as the private citizen: as it is the first of laws, it cannot be modified by a law; and it is therefore just that the tribunals should obey the Constitution in preference to any law." Alexis de Tocqueville, 1 *Democracy in America* 105 (Phillips Bradley ed., Vintage Books 1945) (1835). It is the role of courts, among other duties, to ensure that legislative enactments do not infringe on activity which is constitutionally protected.

*Planned Parenthood of Greater Iowa, Inc. v. Miller,* 30 F.Supp.2d 1157, 1160 (S.D.Iowa 1998).

The emotions surrounding the flag as a symbol of "beliefs Americans share, beliefs in law and peace and that freedom which sustains the human spirit" are particularly charged. *See Texas v. Johnson,* 491 U.S. 397, 421, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (Kennedy, J., concurring). However, "courts are not tribunals in which issues are decided based on the judge's individual religious, moral, or political beliefs." *Miller,* 30 F.Supp.2d at 1160. Rather, this Court as an "inferior court"[6] and a nonpartisan entity, has "a duty to decide individual cases and controversies based on the United States Constitution and the rulings of the United States Supreme Court." *Id.*

 Here, Plaintiffs, in a 42 U.S.C. § 1983 claim, challenge the facial constitutionality of Iowa Code §§ 718A.1 and 723.4(6) under the First and Fourteenth Amendments. Plaintiffs contend that the statutes are vague, overly broad, and in many respects indecipherable, so that it is not always possible to tell when either of

---

6. Courts under the Supreme Court are called "inferior courts" and are established by Congress under the Constitution. *See Miller,* 30 F.Supp.2d at 1160 n. 3 (citing U.S. Const. art. III, § 1).

the statutes will be violated. Defendants disagree, contending that the statutes are capable of constitutional application and should not be struck down in their entirety.[7] Before the Court can address the merits of the case, however, it must first determine if Plaintiffs have standing to bring this suit.

## B. *Standing*

■ "Standing, whether constitutional or prudential, is a jurisdictional issue which cannot be waived or conceded." *See Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n. 2 (D.C.Cir.1994); *see also Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (stating that the question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"). Indeed, both constitutional and prudential standing must be present, as both are necessary prerequisites to the exercise of jurisdiction. *See Starr v. Mandanici*, 152 F.3d 741, 750 (8th Cir.1998) (stating that the court "lacks jurisdiction" if judicially imposed prudential standing limitations are not satisfied). Here, Defendants challenge Plaintiffs' standing to sue for prospective equitable relief. Defendants, however, do not distinguish whether they challenge Plaintiffs' constitutional or prudential standing. The Court will address each in turn.

### 1. *Constitutional standing.*

■ For this Court to properly exercise jurisdiction, Plaintiffs must satisfy an "ir-reducible constitutional minimum" under Article III by showing the following:

(1) an "injury in fact" that is both (a) concrete and particularized, and (b) actual or imminent, rather than conjectural or hypothetical; (2) a causal connection between the alleged injury and the defendant's conduct; that is, that the injury is "fairly traceable" to the challenged action; and (3) that it is likely that a favorable decision will redress the injury.

*Ben Oehrleins and Sons and Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378 (8th Cir.1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

■ Here, both Plaintiffs are "injured by having to give up, or hesitating to exercise, [their] First Amendment rights...." *International Association of Firefighters of St. Louis v. City of Ferguson*, 283 F.3d 969, 973 (8th Cir.2002). First, Plaintiff Roe was injured on June 4, 2006, when the exercise of his First Amendment rights were cut short under the threat of physical arrest. *See* Pls.' Statement of Material Facts ¶ 7. Indeed, Defendants admit that Plaintiff Roe "removed the flag in response to the officers' threats [of physical arrest]." *Id.* ¶¶ 6, 7; *See* Defs.' Statement of Undisputed Material Facts. Second, Plaintiff Roe is injured by having to give up or hesitating to exercise his First Amendment rights. Plaintiff Roe states that the enforcement of the flag desecration statute "has had a chilling effect on [his] expression involving the flag, and has

---

7. It appears Defendants argue that, should portions of the statutes be found unconstitutional, such provisions should be severed from the remaining constitutional provisions. "Severance of unconstitutional provisions from constitutional portions of a statute is appropriate if it does not substantially impair legislative purpose, the enactment remains capable of fulfilling the apparent legislative intent, and the remaining portion of the enactment can be given effect without the invalid provision." *Clark v. Miller*, 503 N.W.2d 422, 425 (Iowa 1993). However, here, severing portions of the statutes at issue would substantially impair legislative purpose. The statutes must, therefore, stand or fall in their entirety.

caused him to assume a lower community profile with respect to expression in general." Pls.' Statement of Material Facts ¶ 24. Defendants admit this fact. *See* Defs.' Statement of Undisputed Material Facts. Defendants also admit that Plaintiff Roe "reasonably fears that he could also be prosecuted under [the flag misuse statute] if he were to re-initiate his upside down flag protest or display a U.S. flag in any manner that might invite a negative response." Pls.' Statement of Material Facts ¶ 21; *see* Defs.' Statement of Undisputed Material Facts.

Likewise, Plaintiff Klyn is injured by having to give up or hesitating to exercise his First Amendment rights. Plaintiff Klyn states that the flag desecration and misuse statutes "stand as an impediment to any future expression that [he] might want to undertake utilizing the [United States] Flag or other state or federal flags, colors, standards or insignia." Pls.' Statement of Material Facts ¶ 36. Although Defendants disagree with Plaintiff Klyn's assertion, Defendants admit that "Plaintiff Klyn would like to be free from threat of prosecution under the [flag desecration and misuse statutes]," and that "Plaintiff Klyn does not want to be forced to break a law or risk breaking a law in order to legitimately exercise his rights to expressively use and display the [United States] Flag and other government insignias." *Id.* ¶¶ 37, 39; *see* Defs.' Statement of Undisputed Material Facts.

Defendants argue that Plaintiffs' subjective statements that they fear prosecution are wholly speculative. The Court disagrees. Speculative or not, Defendants admit that Plaintiffs reasonably fear prosecution, and admit that as for Plaintiff Roe, past enforcement of the flag desecration statute has "had a chilling effect on [his] expression involving the flag." *See* Pls.' Statement of Material Facts ¶¶ 21, 24, 37,

39; *see* Defs.' Statement of Undisputed Facts. Moreover, in *International Association of Firefighters of St. Louis*, the Eighth Circuit explained that "certainty of injury is not necessary, at least in the First Amendment context." 283 F.3d at 975. In that case, the plaintiff challenged the City of Ferguson's charter which prohibited certain city employees from directly or indirectly sponsoring, electioneering or contributing money or other things of value for any person who was a candidate for mayor or city council. *Id.* at 971. The penalty for violating the charter was termination of employment with the city. *Id.* The plaintiff, a city employee's wife and political activist, argued that she had standing to challenge the charter because she herself was injured, independent of her husband's alleged injury. *Id.* at 973. The Eighth Circuit agreed that the substantial and catastrophic effect on her life and economic status from the termination of her husband's employment with the city was sufficient to constitute an injury. *See id.* at 975. Although the Eighth Circuit noted that the plaintiff's injury was not certain, as it was uncertain whether any of the plaintiff's political activities would prompt the City to discipline or terminate her husband, the Eighth Circuit stated that certainty of injury was *not* necessary in the First Amendment context. *Id.* The Eighth Circuit went on to explain that the plaintiff "should not be required to undertake a prohibited activity, and risk the consequent economic loss, in order to test the validity of the threatened application of the charter." *Id.* Likewise, Plaintiffs Roe and Klyn should not be required to undertake a prohibited activity under either the flag desecration or flag misuse statutes and risk physical arrest and/or prosecution in order to test out their fears and the contours of the statutes.

Defendants also cite to *Lawson v. Hill*, 368 F.3d 955 (7th Cir.2004) and *Winsness*

*v. Yocom,* 433 F.3d 727 (10th Cir.2006) for the proposition that Plaintiffs cannot establish a credible threat of prosecution sufficient to confer standing. The two cases cited by Defendants, one from the Seventh Circuit and the other from the Tenth Circuit are distinguishable from the facts of this case. In *Lawson,* the plaintiff participated in a protest by carrying an American flag with a peace symbol painted on it. During the protest, the chief of police called the altered flag "contraband," and declared that it was illegal to paint a peace symbol on an American flag. However, the chief of police did not arrest or even threaten to arrest the plaintiff or any of the protesters. Despite an outcry from the city council to arrest the protesters, the county prosecutor informed both the police chief and the county sheriff to not investigate. Because the county prosecutor obviously had no intent to prosecute the plaintiff, or anyone else involved in the protest, the court found no credible or realistic threat of prosecution and held that the plaintiff did not have standing. *See* 368 F.3d at 960. Likewise, in *Winsness,* the prosecutors assured the plaintiff that they would not bring charges for flag desecration. *See* 433 F.3d at 731 (stating "assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past") (quoting *D.L.S. v. Utah,* 374 F.3d 971, 975 (10th Cir.2004)). Defendants in this case, however, have not assured Plaintiffs that future arrests and prosecutions will not take place. Defendants only state that, "[p]resumably [they] have learned from these experiences (and from this lawsuit) and will not likely bring repeat charges against plaintiffs . . . ." Defs.' Br. at 3. This is far from an assurance that Defendants will not arrest or prosecute Plaintiffs in the future for expressive conduct involving the United States flag. In this instance, considering the procedural background of this case (Plaintiff Roe was charged and tried, and Plaintiff Klyn's charge was dropped only one day before trial), and recent attempts to prosecute other individuals under the flag desecration statute, *see, e.g., Bohman v. Petersen,* No. 4:02–cv–70610 (S.D.Iowa 2002) (two Grinnell College students charged for hanging the United States flag upside down), Plaintiffs' apprehension of future prosecution is not unreasonable.

■ Additionally, Plaintiffs have also satisfied the remaining two elements to establish constitutional standing: a causal connection between the alleged injury and Defendants' conduct, that is, that the injury is "fairly traceable" to the challenged action; and that it is likely that a favorable decision will redress the injury. Here, the threatened consequence of Plaintiffs exercising their First Amendment rights in matters that involve the use of any flag, standard color, ensign, shield, or other insignia of the United States, or any flag, ensign, great seal, or other insignia of the State of Iowa, would be a criminal misdemeanor charge, followed by either physical arrest, prosecution, or both. *See* Iowa Code §§ 718A.1, 723.4(6). Moreover, if the Court decides favorably on Plaintiffs' claim, the state and its agents will be prevented from enforcing this penalty on Plaintiffs. *See Lujan,* 504 U.S. at 561–62, 112 S.Ct. 2130 (establishing standing depends considerably upon whether the plaintiff is himself an object of the government action at issue, such that if he is, there is ordinarily little question that the action has caused him injury, and that a judgment preventing the action will redress it). Therefore, the Court finds that

Plaintiffs have constitutional standing.[8]

## 2. Prudential standing.

█ In addition to the Article III requirements, the Court is also bound by prudential limitations on its exercise of jurisdiction. These prudential limitations require that a party assert its own legal interests, rather than those of a third party; that a party not assert a "generalized grievance"; and that the party's interests are within the "zone of interests" intended to be protected by the statute, rule or constitutional provision upon which the claim is based. Plaintiffs meet the requirements of prudential standing. Plaintiffs are asserting their own legal interests, specifically, grieving the enforcement of the flag desecration and misuse statutes on their past and potential future activities involving the flag, and the interests at issue, exercise of political or expressive conduct through the use of the United States flag or other state insignia, fall within the interests protected by the First Amendment. *See Johnson,* 491 U.S. at 418, 109 S.Ct. 2533 ("We decline [ ] to create for the flag an exception to the joust of principles protected by the First Amendment."). Therefore, the Court finds that Plaintiffs have prudential standing. The Court now turns to the merits of the case.

## C. First Amendment: Facial Overbreadth Challenge

█ "Facial challenges to overly broad statutes are allowed not primarily

for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Sec'y of Md. v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). To prevail on a facial challenge to the flag desecration and flag misuse statutes, Plaintiffs "must demonstrate that the challenged law[s] either 'could never be applied in a valid manner' or that even though it may be validly applied to the plaintiff[s] and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.'" *N.Y. State Club Ass'n, Inc. v. City of New York,* 487 U.S. 1, 11, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984)). Both standards are narrowly construed. *See id.*

█ "[T]he first kind of facial challenge will not succeed unless the court finds that 'every application of the statute create[s] an impermissible risk of suppression of ideas.'" *Id.* (quoting *Taxpayers for Vincent,* 466 U.S. at 798 n. 15, 104 S.Ct. 2118). Thus, to prevail under the first kind of facial challenge, this Court must determine that the flag desecration and misuse statutes can never be constitutionally applied. The statutes at issue, however, may be constitutionally applied in several different situations. As noted by

---

8. Even if the Court were to assume that Plaintiffs did not suffer an actual injury, in that Plaintiffs did not engage in prohibited expression, Plaintiffs would nonetheless have constitutional standing. As explained by the Eighth Circuit, in a First Amendment facial overbreadth claim, "actual injury can exist for standing purposes even if the plaintiff has not engaged in the prohibited expression as long as the plaintiff is objectively reasonably chilled from exercising his First Amendment

right to free expression in order to avoid enforcement consequences." *Republican Party of Minn. v. Klobuchar,* 381 F.3d 785, 792 (8th Cir.2004). *See* Pls.' Statement of Material Facts ¶ 24; Defs.' Statement of Undisputed Material Facts (admitting that the flag desecration statute "has had a chilling effect on Plaintiff Roe's expression involving the flag, and has caused him to assume a lower community profile with respect to expression in general").

the Supreme Court in *Texas v. Johnson*, "*[a]* tired person might, for example, drag a flag through the mud, knowing that this conduct is likely to offend others, and yet have no thought of expressing any idea," and in such an instance, that person may be prosecuted under the flag desecration or misuse statutes. 491 U.S. at 404 n. 3, 109 S.Ct. 2533. *See also Iowa v. Waterman*, 190 N.W.2d 809 (Iowa 1971) (holding that the flag desecration statute was constitutionally applied to defendant who wore a United States flag as a poncho without any purpose of symbolic expression). Therefore, the Court cannot find that "every application of the statute[s] create[s] an impermissible risk of suppression of ideas." *N.Y. State Club Ass'n*, 487 U.S. at 11, 108 S.Ct. 2225 (quoting *Taxpayers for Vincent*, 466 U.S. at 798 n. 15, 104 S.Ct. 2118). Accordingly, Plaintiffs "first kind" of facial challenge must fail.

■ Plaintiffs, however, can facially challenge the statutes under the "second kind." "[T]he second kind of facial challenge will not succeed unless the statute is 'substantially' overbroad, which requires the court to find 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" *Id.* (quoting *Taxpayers for Vincent*, 466 U.S. at 801, 104 S.Ct. 2118). Thus, Plaintiffs must show that the flag desecration and misuse statutes punish a "'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Such a showing "suffices to invalidate *all* enforcement of the law, 'until and unless limiting construction or partial invalidation so narrows it as to remove seeming threat or

deterrence to constitutionally protected expression.'" *Id.* at 119, 123 S.Ct. 2191 (quoting *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908). This expansive remedy is provided out of concern that the threat of enforcement of an overbroad law "may deter or 'chill' constitutionally protected speech—especially when the overbroad statute imposes criminal sanctions." *Id.* That is:

> Many persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech—harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas. Overbreadth adjudication, by suspending *all* enforcement of an overinclusive law, reduces these social costs caused by the withholding of protected speech.

*Id.* (internal citation omitted).

However, the Supreme Court has cautioned that "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" *Id.* (quoting *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908). Otherwise, substantial social costs are "*created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct." *Id.* To "ensure that these costs do not swallow the social benefits of declaring a law 'overbroad,'" the Supreme Court has "insisted that a law's application to protected speech be 'substantial,' not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications" before applying the "strong medi-

cine" of overbreadth invalidation, *id.* at 120, 93 S.Ct. 2908 (quoting *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908), which the courts employ "sparingly and only as a last resort." *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908.

Here, the Court does not believe that the flag desecration and misuse statutes will substantially deter or chill constitutionally protected speech or conduct of parties not before the Court. That is, there is no "realistic danger that the statute[s] ... will significantly compromise recognized First Amendment protections of parties not before the Court...." *Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. 2118. First, as discussed above, the overbreadth challenge is for the benefit of society and parties not before the Court, not for the benefit of the litigants. *Sec'y of Md.,* 467 U.S. at 958, 104 S.Ct. 2839. Plaintiffs have not made a showing that the statutes at issue pose a "realistic danger" of "substantially" deterring or chilling constitutionally protected speech or conduct of *other parties.* Indeed, Plaintiffs' Amended Complaint focus on their individual fears of future prosecution, not that of the public. *See* Am. Compl.

Second, Plaintiffs cannot show that the statutes' application to protected conduct is "substantial," not only in an absolute sense, but also relative to the scope of the statutes' plainly legitimate applications.[9] *Hicks,* 539 U.S. at 120, 123 S.Ct. 2191. The flag desecration and misuse statutes can be constitutionally applied in numerous circumstances. In fact, the statute can be constitutionally applied in all circumstances where the conduct is not protected, "a group that would seemingly far outnumber [persons engaged in] First Amendment [conduct]." *Id.* at 123, 123 S.Ct.

2191. Even Plaintiffs acknowledge the "use of a flag in the course of public disturbance is such a rare event, it is doubtful whether [the flag misuse provision] 'materially advances' the State's goal of preventing breaches of the peace." Pls.' Br. at 47. Based on the record, Plaintiffs did not demonstrate that the statutes prohibit a "substantial" amount of protected conduct in relation to the statutes many legitimate applications, and the Court cannot find that the statutes as a whole prohibit a "substantial" amount of protected conduct. *See, e.g., Waterman,* 190 N.W.2d at 809 (holding that the flag desecration statute was constitutionally applied to defendant who wore a United States flag as a poncho without any purpose of symbolic expression).

Lastly, it does not appear that there is a realistic danger that the statutes will compromise the First Amendment rights of others not before the Court. It is reasonable to believe that the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution. Indeed, Plaintiff Roe, a lay person, informed Officer Milligan and Sergeant Logan that he was "exercising his First Amendment rights and that his expressive display was not a crime." Am. Compl. ¶ 19. Thus, even assuming that an individual is aware of the existence of the flag desecration or flag misuse statutes in the first instance, the general knowledge that burning a flag as part of expressive conduct is protected would be sufficient to dispel any possible chilling effect. Stated differently, the danger of the statutes substantially deterring or chilling constitutionally protected speech or conduct of parties

---

9. The Supreme Court of Iowa has previously stated that the government "clearly has a substantial, genuine and important interest in protecting the flag from desecration." *Waterman,* 190 N.W.2d at 811.

not before the Court does not seem realistic.

■ As stated by the Supreme Court: "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or conduct *necessarily* associated with speech (such as picketing or demonstrating)." *Hicks,* 539 U.S. at 124, 123 S.Ct. 2191 (emphasis added). The statutes at issue do not specifically address conduct necessarily associated with free speech, nor have the Plaintiffs demonstrated that there is a "realistic danger" that the statutes will significantly compromise recognized First Amendment protections of parties not before the Court. *See Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. 2118. Accordingly, Plaintiffs' facial overbreadth challenge cannot succeed. Thus, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which [the statutes'] sanctions, assertedly, may not be applied." *Broadrick,* 413 U.S. at 615–16, 93 S.Ct. 2908.

### D. *Fourteenth Amendment: Void–for–Vagueness*

■ "The void-for-vagueness doctrine is embodied in the due process clauses of the [F]ifth and [F]ourteenth [A]mendments." *Stephenson v. Davenport Cmty. Sch. Dist.,* 110 F.3d 1303, 1308 (8th Cir.1997) (quoting *D.C. and M.S. v. City of St. Louis, Mo.,* 795 F.2d 652, 653 (8th Cir.1986)). The due process doctrine under the Fourteenth Amendment "incorporates notions of fair notice or warning." *Smith v. Goguen,* 415 U.S. 566, 572, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (*Goguen II*). Indeed, "the essence of the due process clause of the Fourteenth Amendment, is the rule that all persons 'are entitled to be informed as to what the state commands or forbids.' " *Goguen v. Smith,* 471

F.2d 88, 94 (1st Cir.1972) (quoting *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). "In short, a [statute] is void-for-vagueness if it 'forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to is application....' " *Stephenson,* 110 F.3d at 1308 (quoting *Goguen II,* 415 U.S. at 573, 94 S.Ct. 1242).

■ Moreover, the void-for-vagueness doctrine prevents arbitrary and discriminatory enforcement. *Id.* That is, legislatures must set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement. *Goguen II,* 415 U.S. at 573, 94 S.Ct. 1242. Otherwise, a "vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis...." *Stephenson,* 110 F.3d at 1308 (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); *see also United States v. Reese,* 92 U.S. 214, 221, 23 L.Ed. 563 (1875) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."). Especially where a statute's literal scope, as here, "is capable of reaching expression sheltered by the First Amendment, the [void-for-vagueness] doctrine demands a greater degree of specificity than in other contexts." *Goguen II,* 415 U.S. at 573, 94 S.Ct. 1242.

■ To determine whether an ordinance is unconstitutionally vague, "courts traditionally have relied on the common usage of statutory language, judicial explanations of its meaning, and previous appli-

cations of the statute to the same or similar conduct." *Stephenson,* 110 F.3d at 1309 (quoting *D.C. and M.S.,* 795 F.2d at 654) (internal citations omitted). Here, there are only three published cases that have addressed the flag desecration statute at issue, *see Iowa v. Farrell,* 223 N.W.2d 270 (Iowa 1974); *Iowa v. Kool,* 212 N.W.2d 518 (Iowa 1973); *Waterman,* 190 N.W.2d at 809,[10] and at least one unpublished case, *see Bohman v. Petersen,* 4:02–cv–70610 (S.D.Iowa).[11] None of these cases, however, offer narrowing state court interpretation of the statutory language. Regardless, the Court turns to these prior judicial explanations and applications of the flag desecration statute.

In *Waterman,* the Supreme Court of Iowa first addressed the constitutionality of the flag desecration statute, codified at that time as Iowa Code § 32.1. The defendant in *Waterman* was charged and convicted of violating § 32. 1, after he walked through a hotel lobby wearing a United States flag as a "poncho" after he cut a slit in the flag to put it over his head. In *Waterman,* the First Amendment was not implicated because defendant conceded that his conduct was not symbolic speech, as he had no purpose or intention to express anything by wearing the flag. As for Waterman's contention that the statute was unconstitutionally vague, the court summarily held, without discussion, that "the statute under attack provide[d] the requisite degree of certainty to provide men of ordinary intelligence with fair notice as to what conduct is proscribed." 190 N.W.2d at 813.[12] Two years after *Water-*

*man,* the Supreme Court of Iowa faced another constitutional challenge to § 32.1 in *Iowa v. Kool.* The defendant in *Kool* was convicted under the flag desecration statute after he hung an upside down United States flag behind a peace sign on his window. The court held that the statute was unconstitutional as applied. However, the court again rejected the contention that the statute was unconstitutionally vague and merely cited to *Waterman* as support. In *Farrell,* the Supreme Court of Iowa did not address the issue of vagueness and limited its discussion to the constitutionality of the flag desecration statute as applied. Therefore, with these limited prior judicial explanations and statute applications for guidance, the Court now looks to the common usage of the statutory language.

As noted above, the flag desecration statute makes it a misdemeanor:

(1) to place any word, figure, mark, picture, design, drawing, or any advertisement of any nature, upon any flag, standard, color, ensign, shield, or other insignia of the United States, or upon any flag, ensign, great seal, or other insignia of this state;

(2) to expose to public view, any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state, upon which shall have been printed, painted, or otherwise placed, or to which shall be attached, appended, affixed, or annexed, any word,

---

**10.** The Court has been unable to locate any published Iowa state court cases addressing the flag misuse statute.

**11.** The lead counsel for the unpublished *Bohman* case was Mr. Randall C. Wilson, the same attorney representing Plaintiffs in this case.

**12.** The *Waterman* court cited to *Hoffman v. United States,* 256 A.2d 567 (D.C.1969) and *People v. Radich,* 26 N.Y.2d 114, 125, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970) for support. However, *Radich* relied heavily on *Hoffman,* and *Hoffman* was subsequently reversed on appeal, 445 F.2d 226 (D.C.Cir. 1971).

figure, mark, picture, design, or drawing, or any advertisement of any nature; (3) to expose to public view, manufacture, sell, expose for sale, give away, or have in possession for sale, or to give away, or for use for any purpose any article or substance, being an article of merchandise or a receptacle of merchandise or article or thing for carrying or transporting merchandise, upon which shall have been printed, painted, attached or otherwise placed, a representation of any such flag, standard, color, ensign, shield, or other insignia of the United States, or any such flag, ensign, great seal, or other insignia of this state; (4) to advertise, call attention to, decorate, mark, or distinguish the article or substance on which so placed; (5) for a person to publicly mutilate, deface, defile or defy, trample upon, cast contempt upon, satirize, deride or burlesque, either by words or act, such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state; or (6) for a person to, for any purpose, place such flag, standard, color, ensign, shield, or other insignia of the United States, or flag, ensign, great seal, or other insignia of this state, upon the ground or where the same may be trod upon.

*See* Iowa Code § 718A.1. Similarly, the flag misuse statute makes it a misdemeanor for a person to knowingly and publicly use the flag of the United States in such a manner as to show disrespect for the flag as a symbol of the United States, with the intent or reasonable expectation that such use will provoke or encourage another to commit a public offense. Iowa Code

§ 723.4(6). Because prior Iowa judicial explanations are not particularly helpful in this instance, the Court looks to the common usage of the statutory language.

The Supreme Court has analyzed the common usage of "treats contemptuously" in the context of reviewing Massachusetts' flag desecration statute—a statute very similar to the flag desecration at issue here.[13] In *Goguen II*, the Supreme Court explained that the phrase "treats contemptuously" was void-for-vagueness because "[f]lag contempt statutes have been characterized as void for lack of notice on the theory that what is contemptuous to one man may be a work of art to another." 415 U.S. at 573, 94 S.Ct. 1242 (internal citation and quotation omitted). The Supreme Court noted that "casual treatment of the flag in many contexts has become a widespread contemporary phenomenon[,]" and aptly summarized:

Flag wearing in a day of relaxed clothing styles may be simply for adornment or a ploy to attract attention. It and many other current, careless uses of the flag nevertheless constitute unceremonial treatment that many people may view as contemptuous. Yet in a time of widely varying attitudes and tastes for displaying something as ubiquitous as the United States flag or representations of it, it could hardly be the purpose of the Massachusetts Legislature to make criminal every informal use of the flag. That statutory language under which [the defendant] was charged, however, fails to draw reasonably clear lines between the kinds of nonceremonial treatment that are criminal and those that are not. Due process requires that "all be informed as to what the State commands or forbids," *Lanzetta v. New Jer-*

---

**13.** Although Iowa's flag desecration statute prohibits a person to "cast contempt upon" the flag, rather than "treat[ ] contemptuously"

the flag, this distinction is without a difference in the context of the Supreme Court's due process analysis.

*sey,* 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and that "men of common intelligence" not be forced to guess at the meaning of the criminal law. *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Given today's tendencies to treat the flag unceremoniously, those notice standards are not satisfied here.

*Id.* at 573–74, 94 S.Ct. 1242. As noted, there is no substantial difference between the phrase "cast contempt upon" and "treat[ ] contemptuously." Accordingly, "cast contempt upon" must be found void-for-vagueness.

◼ Likewise, the phrase "show disrespect" in the flag misuse statute is void-for-vagueness. The term "disrespect" is defined as "lack of respect or reverence." Webster's Third New International Dictionary 656 (1965). The Supreme Court has stated that terms such as mutilate, deface, defile, and trample all connote disrespect. *See United States v. Eichman,* 496 U.S. 310, 317, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) ("criminalizing the conduct of anyone who 'knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag' ... [where] [e]ach of the specified terms— with the possible exception of 'burns'— unmistakably connotes disrespectful treatment of the flag") (quoting 18 U.S.C. § 700(a)(1)). Thus, similar to the discussion above on the term "contempt," the term "disrespect" is subjective and subject to widely varying attitudes and tastes. *See Goguen II,* 415 U.S. at 573–74, 94 S.Ct. 1242. Furthermore, as Plaintiffs point out, the imposition of the intent element in the flag misuse statute, "with the intent or reasonable expectation that such use will provoke or encourage another to commit a public offense," adds another level of uncertainty and vagueness. That is, a person of reasonable intelligence must not

only guess as to what conduct would constitute "disrespect," but also guess as to what conduct would also "provoke or encourage another to commit a public offense." Iowa Code § 723.4(6). The Supreme Court observed that such vague laws, which gather "one comprehensive definition of an offense a number of words which have a multiplicity of meanings ... [would leave the] average person charged with its violation ... uncertain as to what conduct and attitudes of mind would be enough to convict under it." *Gregory v. City of Chicago,* 394 U.S. 111, 119, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969) (Black, J., concurring). The flag misuse statute, as written, "could authorize conviction simply because the form of the protest displeased some of the onlookers," sufficient to provoke or encourage the onlooker to commit a public offense. *Id.* Therefore, both the flag desecration and flag misuse statutes fail to specifically define vital terms necessary to put a person of reasonable intelligence on notice of what conduct is prohibited.

The term "flag," likewise, suffers from the same problem. In *Parker v. Morgan,* 322 F.Supp. 585, 588 (W.D.N.C.1971), the district court stated that "for a flag control statute to be constitutional it must precisely define a flag and carefully avoid expropriation of color and form other than the defined emblem itself." The definition of "flag" in *Parker* is practically identical to Iowa's definition of "flag." *Compare Parker,* 322 F.Supp. at 587 n. 1 *with* Iowa Code §§ 718A.3, 718A.4. The *Parker* court stated, "it seems to us that red, white and blue trousers with or without stars are trousers and not a flag and that it is beyond the state's competence to dictate color and design of clothing, even bad taste clothing." *Id.* at 588. That is:

> The definition of flag in the North Carolina statute is simply unbelievable. It would doubtless embrace display of the

Star of David against a red, white and blue background. The statute makes plain that it matters not how many stripes or how many stars. One of each is enough.... Size is of no consequence and substance of no importance. It is even possible that the stars could be omitted entirely and the colors alone infringe the statute, for there is a disjunctive clause leaving it to the subjective determination of any person to believe, without deliberation, that a substance or design may represent the flag of the United States. Read literally, it may be dangerous in North Carolina to possess anything red, white and blue ... this definition alone is sufficient to void the statute.

*Id.* The Court finds the reasoning of Parker to be persuasive. Again, as with the terms, "contempt" and "disrespect" discussed above, the term "flag" is subjective, at least as it is defined in the statutes here at issue. What one person may view as a flag, another may view as red, white and blue trousers.

"Certainly nothing prevents a legislature from defining with substantial specificity what constitutes forbidden treatment of United States flags." *Goguen II*, 415 U.S. at 581–82, 94 S.Ct. 1242. However, as currently written, the flag desecration and misuse statutes fail to provide adequate notice of prohibited conduct because "cast contempt upon," "show disrespect," and "flag," amongst other terms,[14] without more, is fatally vague. *See Stephenson*, 110 F.3d at 1310 (citing *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir.1992) (statute void-for-vagueness on its face because, "without a definition of 'violence,' the statute lacks any

'narrowly drawn, reasonable and definite standard[ ]' identifying the expression that is subject to the statute's restriction") (quoting *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 690, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968))). In *Johnson,* the United States Supreme Court held that burning the United States flag as part of a political speech was protected conduct under the First Amendment, and reversed the defendant's conviction under the state's flag desecration statute. 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342. In this case, Plaintiffs hung the United States flag upside down in protest to government actions. A person of "common intelligence" could reasonably believe that if burning a United States flag as part of a political speech is protected conduct, then merely hanging the flag upside down as part of expressive speech would also be protected conduct. However, both Plaintiffs were criminally charged, and Plaintiff Roe was fully prosecuted under the flag desecration statute. Although Plaintiffs' charges and prosecutions were ultimately dismissed and dropped, Plaintiffs' rights were nonetheless impaired. *See Goguen,* 471 F.2d at 96 (noting that the statute's "failure to give adequate notice of the offense may never even be raised in possibly numerous unconstitutional applications because of the practice of dismissing cases by dropping charges before trial [and in such] situations, there will frequently be little opportunity to vindicate constitutional rights impaired by illegal arrests and detentions, records of which seem to follow even the most innocent throughout their lives"). As written, the statutes at issue do not provide fair notice of prohibited conduct.

---

**14.** Here, the Court may not strike the unconstitutionally vague terms from the flag desecration and misuse statutes because other terms within the statutes can be deemed unconstitutionally vague. As noted above, severing the unconstitutional provisions from the flag desecration and misuse statutes would substantially impair the legislative purpose.

Moreover the statutes suffer from an additional defect because they allow local law enforcement authorities unfettered discretion to decide what represents "contempt," "disrespect," and "flag." *See id.* at 95–96. For example, as noted in *Goguen II*, which the Eighth Circuit cited with approval in *Stephenson*, the standard "treats contemptuously" is "so indefinite that police and juries were free to act based on little more than their own views about how the flag should be treated." *Stephenson*, 110 F.3d at 1303 (citing *Goguen II*, 415 U.S. at 568–69, 94 S.Ct. 1242). This reasoning also applies to the term "disrespect," and to what would actually constitute a flag. Although the Court can appreciate the difficulty in drafting precise laws, laws that provide police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them have repeatedly been invalidated. *City of Houston v. Hill*, 482 U.S. 451, 465, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Thus, "[l]egislatures may not so abdicate their responsibilities for setting standards of the criminal law." *Goguen II*, 415 U.S. at 575, 94 S.Ct. 1242. Law enforcement authorities must be given "sufficient guidelines as to prohibited offenses if they are to act properly, often in situations where emotions are high and a quick evaluation of the circumstances is necessary to effectuate constitutional arrests." *Goguen*, 471 F.2d at 95. Stated differently, "[l]awmaking [must] not [be] entrusted to the moment-to-moment judgment of the policeman on his beat." *Id.* (quoting *Gregory*, 394 U.S. at 120, 89 S.Ct. 946). In their current form, the statutes do not establish minimal guidelines to govern law enforcement. Rather, the statutes place "unfettered discretion" in the hands of law enforcement authorities and prosecutors. *Id.*

Moreover, such unfettered discretion would result in discriminatory enforcement and prosecution. That is, any effort to enforce the statutes "would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of court and jury." *Id.* at 96 (quoting *United States v. Cohen Grocery Co.*, 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516 (1921)). The First Circuit notably summarized:

> The present case cannot be compared to the situation where a person who sees thousands of others illegally crossing a street seeks to escape punishment for commission of a similar wrong. In that situation there are well-defined crossing signals, cross-walks and signs which give all persons adequate notice that they are about to commit an offense. Instead we have the totally different situation where those charged with violation of the [flag] statute ... after having seen unpunished hundreds, perhaps thousands, of citizens with American flags sewn to various parts of their clothes, or flying in frayed condition from radio antennas of automobiles, or used as advertising in store windows, are expected to know that their similar actions—such as sewing a flag to the seat of one's pants—could constitute contemptuous treatment.

*Id.* Similarly, it seems unlikely that a veteran wearing a shirt with an American flag, with the words "United We Stand" superimposed on it during a rally to support United States troops at war, even with the intent or reasonable expectation that the shirt will provoke or encourage a group of anti-war protesters watching the rally to commit a public offense, would be prosecuted under the statutes, while a war protestor, wearing a similar shirt with the words "Imperialist" superimposed may very likely be prosecuted under the stat-

utes. "Where inherently vague statutory language permits such selective law enforcement, there is a denial of due process." *Goguen II*, 415 U.S. at 576, 94 S.Ct. 1242. *See* Pls.' App. at B2–B8 (examples of unpunished images or conduct). Accordingly, the Court finds that the flag desecration and misuse statutes are void-for vagueness and facially unconstitutional under the Fourteenth Amendment. Although Plaintiffs seek both preliminary and permanent injunctive relief preventing future enforcement of the statutes against them, the Court declines to grant such relief based on the assumption that the Iowa prosecutorial authorities will give full credence to this decision that the present statutes are unconstitutionally vague on their face. *See Roe v. Wade*, 410 U.S. 113, 166, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (declining to address the issue of injunctive relief with the assumption that state prosecutorial authorities will give full credence to the Court's decision).

## V. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Summary Judgment is **DENIED** as to the facial overbreadth challenge under the First Amendment, and **GRANTED** as to the facial void-for-vagueness challenge under the Fourteenth Amendment of the United States Constitution.

IT IS SO ORDERED.