# NO. 12-12-00425-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,*<br>*APPELLANT* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW* |
| *TERENCE JOHNSON,*<br>*APPELLEE* | *§* | *HOUSTON COUNTY, TEXAS* |

## *OPINION*

The State appeals the trial court's order granting Appellee Terence Johnson's motion to dismiss. The State raises two issues on appeal relating to the constitutionality of Texas Penal Code Section 42.11. We affirm.

## BACKGROUND

Appellee Terence Johnson was charged by complaint and information with the offense of destruction of a flag, committed on or about April 29, 2012. Appellee filed a motion to dismiss on the grounds that Section 42.11 of the penal code (the Texas flag destruction statute) is unconstitutional and its enforcement interferes with his right to free speech. The State argued that Appellee's conduct was not speech and that the statute is constitutional.

The trial court disagreed with the State's contention that Appellee's act of pulling a local business establishment's flag off its post and throwing it into the street did not constitute speech. The court reasoned that if the act of burning the flag is protected speech, then so too is the act of throwing a flag to the ground. Stating that it was bound by the holdings in *United States v.*

*Eichman*, *Texas v. Johnson*, and *State v. Jimenez*, the trial court dismissed the case.[1]  This appeal followed.

## CHALLENGING CONSTITUTIONALITY

The trial court dismissed the State's information against Appellee, finding "that Section 42.11 is unconstitutional and [its] enforcement . . . unconstitutionally interferes with [Appellee's] right of free speech."  When the constitutionality of a statute is challenged on appeal, we review the trial court's ruling de novo.  *See Lawson v. State*, 283 S.W.3d 438, 440 (Tex. App.—Fort Worth 2009, pet. ref'd).  We presume a statute is valid and that the legislature did not act unreasonably or arbitrarily in enacting the statute.  *Battles v. State*, 45 S.W.3d 694, 702 (Tex. App.—Tyler 2001, no pet.) (citations omitted).  The burden rests on the party challenging the statute to establish its unconstitutionality.  *Id*., 45 S.W.3d at 702.  We will uphold the statute if we can determine a reasonable construction that will render it constitutional and carry out the legislative intent.  *Lawson*, 283 S.W.3d at 440; *Battles*, 45 S.W.3d at 702.

A statute may be found unconstitutional "as applied" to a specific set of facts or "on its face."  *See Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex. Crim. App. 2010); *Bynum v. State*, 767 S.W.2d 769, 773 (Tex. Crim. App. 1989).  Generally, a defendant must show that a statute is unconstitutional "as applied" to the conduct for which he was charged.  *See id*. at 774.  A claim that a statute is unconstitutional "as applied" is a claim that the statute operates unconstitutionally with respect to the claimant because of his particular circumstances.  *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006).  In cases where constitutionality is raised, the courts will decide the issue on the narrowest ground possible, which means that, if a statute is found unconstitutional, it will typically be found unconstitutional "as applied."  *See, e.g.*, *Texas v. Johnson*, 491 U.S. 397, 403 n.3, 109 S. Ct. 2533, 2539 n.3, 105 L. Ed. 2d 342 (1989).

A facial challenge to the constitutionality of a statute is more difficult for the challenger because, in addressing it, we must presume that the legislature enacted a constitutional law.  *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011).  Generally, a facial challenge to a statute is an assertion that the statute always operates unconstitutionally.

---

[1] *See generally **United States v. Eichman***, 496 U.S. 310, 110 S. Ct. 2404, 110 L. Ed. 2d 287 (1990); ***Texas v. Johnson***, 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989); ***State v. Jimenez***, 828 S.W.2d 455 (Tex. App.—El Paso 1992, writ ref'd).

*Gillenwaters*, 205 S.W.3d at 536 n.2 (referring to facial challenges for vagueness). An exception to this general rule applies, however, if a statute implicates the First Amendment and is so broad that it may inhibit the constitutionally protected speech of third parties. *See New York State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 11, 108 S. Ct. 2225, 2233, 101 L. Ed. 2d 1 (1988); *see also Scott*, 322 S.W.3d at 665 n.3.

<u>CONSTITUTIONALITY OF SECTION 42.11</u>

Under Section 42.11 of the Texas Penal Code, a person commits a criminal offense when he "intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas." TEX. PENAL CODE ANN. § 42.11(a) (West 2011). The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I.

This guarantee of free speech is applicable to the states by the Due Process Clause of the Fourteenth Amendment and generally protects the free communication and receipt of ideas, opinions, and information. *Scott*, 322 S.W.3d at 668. It is well settled that the burning of an American flag in protest qualifies as expressive conduct triggering the First Amendment's freedom of speech protections. *See Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540. But not every action taken with respect to the American flag is expressive, and the First Amendment has no application when what is restricted is not protected speech. *See id.*, 491 U.S. at 405, 109 S. Ct. at 2540; *Nevada Comm'n on Ethics v. Carrigan*, 131 S. Ct. 2343, 2347, 180 L. Ed. 2d 150 (2011).

**Section 42.11 As Applied to Appellee**

In its second issue, the State contends that application of Section 42.11 did not interfere with Appellee's First Amendment rights because his conduct did not constitute symbolic speech. In deciding whether Section 42.11 is constitutional as applied to Appellee, our first step is to determine whether Appellee's actions constitute expressive conduct. *See Johnson*, 491 U.S. at 403, 109 S. Ct. at 2538.

1. *Expressive Conduct*

"[T]he First and Fourteenth Amendments have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstance[] that he chooses." *Cohen v. California*, 403 U.S. 15, 19, 91 S. Ct. 1780, 1785, 29 L. Ed. 2d 284 (1971). In determining whether conduct contains sufficient

communicative elements to bring the First Amendment into play, we consider (1) the nature of the communicative activity, (2) the context in which the conduct occurred, (3) whether an intent to convey a particularized message was present, and (4) whether the likelihood was great that the message would be understood by those who viewed it. *Johnson*, 491 U.S. at 404-05, 109 S. Ct. at 2539-40; *Spence v. Washington*, 418 U.S. 405, 409-10, 415, 94 S. Ct. 2727, 2730, 2732, 41 L. Ed. 2d 842 (1974). The particularized message need not be "a narrow, succinctly articulable message" in order to gain constitutional protection. *See Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Group of Boston*, 515 U.S. 557, 569, 577, 115 S. Ct. 2338, 2345, 2349, 132 L. Ed. 2d 487 (1995) (holding that "in the context of an expressive parade, as with a protest march, the parade's overall message is distilled from the individual presentations along the way, and each unit's expression is perceived by the spectators as part of the whole").

"Pregnant with expressive content, the flag as readily signifies this Nation as does the combination of letters found in 'America.'" *Johnson*, 491 U.S. at 405, 109 S. Ct. at 2540 (citations omitted). The purpose of a national flag is to serve as a symbol of our country, and the courts have found little difficulty in identifying an expressive element in conduct relating to flags. *Id.*, 491 U.S. at 405, 109 S. Ct. at 2540. "The use of [a] flag to symbolize some system, idea, institution, or personality, is a [shortcut] from mind to mind." *Id.*, 491 U.S. at 405, 109 S. Ct. at 2540 (citations omitted).

In *Spence v. Washington*, the Court held that attaching a peace symbol to an American flag and hanging it upside down from a window, when viewed in light of recent events (invasion of Cambodia and killings at Kent State University occurring a few days prior to the student's arrest), was sufficiently communicative to trigger First Amendment protection. *Spence*, 418 U.S. at 406, 414-15, 94 S. Ct. at 2728, 2732.

Flag burning by protesters during a political demonstration was also considered expressive conduct in *United States v. Eichman* and *Texas v. Johnson*. *See United States v. Eichman*, 496 U.S. 310, 315, 110 S. Ct. 2404, 2407, 110 L. Ed. 2d 287 (1990); *Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540. Other examples of conduct relating to flags triggering First Amendment protection include slashing a flag and throwing it to the ground to display anger with the government, flying a flag upside down,[2] and using a flag as decoration inside one's

---

[2] Displaying the American flag upside down is known as a signal of distress in instances of extreme danger to life or property. *See* 4 U.S.C.A. § 8(a) (West, Westlaw current through P.L.113-52 approved 11-21-13).

home. *See **Snider v. City of Cape Girardeau***, No. 1:10-CV-10 (CEJ), 2012 WL 942082, at *1 (E.D. Mo. Mar. 20, 2012); ***Roe v. Milligan***, 479 F.Supp.2d 995, 998 (S.D. Iowa 2007); ***Commonwealth v. Bricker***, 666 A.2d 257, 261 (Pa. 1995). We have been unable to locate any cases since ***Johnson*** and ***Eichman*** where conduct involving a flag was held to be nonexpressive conduct.

### 2. *Appellee's Conduct*

It is Appellee's burden to prove that Section 42.11 is unconstitutional as applied to him. *See **Battles***, 45 S.W.3d at 702. In its findings of fact, the trial court states that Appellee "claims that he was upset by racial remarks made about his mother by a local merchant [and] in his anger he says he pulled the flag down and threw it on the ground." Video camera surveillance of the area shows two African American males and one African American female walking on a covered sidewalk next to a building. One male jumped in the distance reaching towards a hanging flag. Then, the second male (Appellee), reached and jumped for the same flag and caused the flag and its staff to come off its post into his hand. Appellee then threw the flag and its staff into the street. It does not appear that anyone other than the male and female walking with Appellee witnessed Appellee's conduct. But Appellee said that shortly after the flag was thrown, someone driving on the street stopped and picked up the flag. The surveillance video shows that at almost the same time Appellee threw the flag into the street, the other male knocked over flower pots along the sidewalk. Upon approaching the surveillance camera, Appellee made various hand gestures and walked out of view.[3]

In a recorded interview, Appellant admitted that he threw the flag into the street. He explained that he threw the flag because he was "mad." The interview also included the following dialogue:

> Appellee: I ain't gonna lie, I got, I just got you know, how I tripped out from the woman in the store and everything, so I threw the flag, that uh, Texas flag thing, I threw it.
>
> Law Enforcement: The American flag.
>
> Appellee: Yeah, American flag, I didn't mean to, you know what I'm sayin' I just got so mad.

---

[3] Although we must defer to a trial court's factual findings, we may review de novo "indisputable visual evidence" contained in a videotape. *See **State v. Duran***, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013) ("appellate courts may review de novo 'indisputable visual evidence'").

Law Enforcement:  What did you get mad about?

Appellee:  See, I don't know, I told the woman in the store, you know what I'm sayin' she was she was looking at me, like, looking at the family, I guess my mama was with us [unintelligible] when we went to the store, she was looking at us crazy, she was looking at us real crazy, so I told her, said you gotta problem? Like, you lookin' at us like we're gonna take something, or something.  And then later on we went back to the store again, and she said, uh, I guess she she married or she went with a black man, or something like that, she was tellin' us.  Then I, you know what I'm saying my brother in law I don't know, he don't, know what he did.  He did something, I don't know, I went with him the other day, he he he [unintelligible] by himself.

. . . .

Law Enforcement:  Well now, you you said that you, she kinda offended you you felt like she offended you at a store or the way she talked to you or looked at you?

Appellee:  I kinda felt like she offended me so, I got mad.

Law Enforcement:  Was that the first time when you was in the store?

Appellee:  Yeah, that's the first time we went to the store.

Law Enforcement:  When you was with your mama and them?

Appellee:  Yeah I was with everybody the first time we went to the store.

Law Enforcement:  —And that's when you threw—

Appellee:  That's when we went back to the uh, we went back to the park, and then we parked and then me and my sister and my brother—the dude, we walked to the store, right, and we walked to the store and we came back up and that's when I got mad, I threw the flag, I ain't gonna lie, I just realize—

Law Enforcement:  Where [was] the flag at?

. . . .

Law Enforcement:  Where was the flag at when you got—

Appellee:  The flag was, it was some kind of stretched, it was like on the side of a of a building, it was right there hanging up like this you know what I'm sayin, I took, I didn't know it came off, I took it off and when I did this  [gesturing] I didn't know it was going to come off, it came off, actually I didn't know it was going to come off.

Law Enforcement:  What did you do with it?

. . . .

Law Enforcement:  How did it go into the road, be honest now, how did it go in the road?

Appellee:  Oh, I threw it.

Law Enforcement:  Ok—

Appellee:  I'll be real with you.

6

Law enforcement: 'Cause you were mad?

Appellee: Yeah, I was mad.

Law Enforcement: At that woman?

Appellee: Yeah, I was mad at her.

At the conclusion of the interview, Appellee apologized for throwing the flag into the street.

3. *Discussion*

In its findings of fact and conclusions of law, the trial court states that if conduct involving the burning of a flag is protected speech, the act of throwing a flag to the ground can also be protected speech. However, the trial court's findings do not address whether Appellee intended to convey a particularized message and whether the likelihood was great that the message would be understood by those who viewed it. *See Johnson*, 491 U.S. at 404-05, 109 S. Ct. at 2539-40.[4]

Based upon our review of the evidence, we conclude that Appellee's conduct was not "sufficiently imbued with elements of communication" to implicate the First and Fourteenth Amendments. *Id.*, 491 U.S. at 404, 109 S. Ct. at 2539. The record before us shows that Appellee engaged in an act of criminal mischief with no intent to convey any particularized message. *See id.*, 491 U.S. at 404, 109 S. Ct. at 2539. According to his own statement, Appellee did not expect the flag to come off its staff and into his hand when he jumped and reached for it.

Although the trial court's findings reflect that Appellee "claim[ed]" a local merchant made "racial remarks about his mother," we have found no such evidence in the record. Appellee did not testify during the hearing, and the only explanation for his conduct is the one he gave in the interview. Appellee's explanation that he was mad because he "felt like he had been offended" by a local merchant does not implicate the protections afforded to symbolic speech.

---

[4] The trial court's findings of fact and conclusions of law are based on the surveillance camera video, the recorded interview with Appellee, and the arguments of counsel. The trial court's findings do not contain any credibility determinations. If a trial court's factual findings do not contain any credibility determinations, the appellate court may abate the appeal and remand for more specific findings. *See State v. Mendoza*, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012). The evidence before this court on appeal is in the same form as it was before the trial court. Aside from the two videos, there was no other evidence relating to Appellee's conduct. Therefore, the trial court was not in a better position to judge the credibility of the evidence, and our resolution of the legal issue before us does not turn on witness credibility. *See Duran*, 396 S.W.3d at 571; *Mendoza*, 365 S.W.3d at 670, 673. Accordingly, we need not abate the appeal for further findings. *See id.* at 673.

The individuals prosecuted in *Spence*, *Johnson*, and *Eichman* found something offensive about what the government was doing, and their disagreement with and protest of the offending action was conveyed by their conduct. Spence protested the invasion of Cambodia and the killings at Kent State University and sought to associate the American flag with peace instead of war and violence. *See Spence*, 418 U.S. at 408, 94 S. Ct. at 2729. He was quoted as saying, "I felt there had been so much killing and that this was not what America stood for. I felt that the flag stood for America and I wanted people to know that I thought America stood for peace." *Id.*, 418 U.S. at 408, 94 S. Ct. at 2729. Johnson burned a flag during a protest in which demonstrators marched through Dallas, chanting slogans, staging "die-ins," and protesting policies of the Reagan administration. *Johnson*, 491 U.S. at 399, 109 S. Ct. at 2537. Finally, the demonstrators in *Eichman* burned American flags while protesting domestic and foreign policy and passage of the Flag Protection Act. *Eichman*, 496 U.S. at 312, 110 S. Ct. at 2406.

These cases refer to conduct that was beyond an act of criminal mischief. Spence, Johnson, and the individuals in *Eichman* each had a specific cause that they found objectionable, and that cause was a result of government policies or action. Assuming Appellee was justified in "feeling offended" by the way the merchant looked at him, or something that she said, the fact that he used an American flag while engaging in an act of criminal mischief does not make him any less culpable. *See Johnson*, 491 U.S. at 404, 109 S. Ct. at 2539 (rejecting view that limitless variety of conduct can be labeled "speech" whenever someone intends to express an idea). The First and Fourteenth Amendments do not condone retribution of offensive conduct by damaging private property, and, as a result, do not excuse Appellee's conduct. *See* U.S. CONST. amends. I, XIV; *Johnson*, 491 U.S. at 405, 109 S. Ct. at 2540.

The record does not show that Appellee intended to convey a particularized message when he threw the flag into the street. Therefore, Appellee did not satisfy his burden by proving that the Texas flag destruction statute is unconstitutional as applied to him. *See Battles*, 45 S.W.3d at 702. Accordingly, we sustain the State's second issue.

**Section 42.11 "On its Face"**

In its first issue, the State asserts that Section 42.11 is valid on its face. Appellee contends to the contrary. He compares the current statute to the Flag Protection Act of 1989 and argues that Section 42.11, as did the Flag Protection Act of 1989, "attempts to legislate a limitation on expression when that expression includes the negative use of a flag."

"A statute is considered impermissibly overbroad if, in addition to proscribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984); *see also Scott*, 322 S.W.3d at 665 n.2. Courts have admonished that the overbreadth doctrine is "strong medicine" that should be employed "sparingly" and "only as a last resort." *See Ex parte Ellis*, 309 S.W.3d 71, 91 (Tex. Crim. App. 2010).

A challenger may prevail in a facial challenge to an overly broad statute by demonstrating that, although the law may be validly applied to the challenger and others, "it nevertheless is so broad that it may inhibit the constitutionally protected speech of third parties." *New York State Club Ass'n, Inc.*, 487 U.S. at 11, 108 S. Ct. at 2233. Thus, a statute that may be legitimately applied to a specific set of facts may nevertheless be invalidated in order to prevent a chilling effect on the exercise of First Amendment freedoms. *See Ex parte Ellis*, 309 S.W.3d at 90-91. The court of criminal appeals has explained that an overbreadth challenge is justified even when the challenger's conduct is not constitutionally protected because "the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights." *Scott*, 322 S.W.3d at 665 n.3.

The first step in our overbreadth analysis is to construe the challenged statute. *United States v. Stevens*, 559 U.S. 460, 474, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010). Next, we must determine whether the enactment reaches a substantial amount of constitutionally protected conduct. *Bynum*, 767 S.W.2d at 772 (citations omitted).

1. *Construction of Section 42.11*

An individual can be prosecuted under Section 42.11 if he "intentionally or knowingly damages, defaces, mutilates, or burns" an American or Texas flag. *See* TEX. PENAL CODE ANN. § 42.11(a). The penal code does not define "damage," "deface," "mutilate," or "burn." When statutory terms are undefined, the courts may consult standard dictionaries in attempting to discern the fair, objective meaning of the undefined statutory terms. *See Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011).

The most relevant definition of "burn" means "to undergo combustion." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 165 (11th ed. 2011). "Damage" is defined as "loss or harm resulting from injury to person, property, or reputation"; thus, when damage is used as a verb, it means "to cause damage to." *Id.* at 314. "Deface" means "to mar the appearance of:

injure by effacing significant details." *Id.* at 325. "Mutilate" means "to cut up or alter radically so as to make imperfect." *Id.* at 820.

The only exception to the prohibited conduct is an act done "in conformity with statutes of the United States or of this state relating to the proper disposal of damaged flags." *See* TEX. PENAL CODE ANN. § 42.11(c). Section 42.11 criminalizes both expressive and nonexpressive conduct involving the flag. The statute also makes no distinction as to whether the actor's conduct is directed towards his privately owned flag or the flag of another.

2. *Constitutionally Protected Conduct*

Section 42.11's criminalization of burning, damaging, and defacing a flag unless it is for purposes of "proper disposal" prohibits the conduct that was recognized and deemed constitutionally protected in *Eichman*, *Johnson*, and *Spence*. *See generally Eichman*, 496 U.S. 310, 110 S. Ct. 2404; *Johnson*, 491 U.S. 397, 109 S. Ct. 2533; *Spence*, 418 U.S. 405, 94 S. Ct. 2728. Our research of Texas jurisprudence revealed only one instance in which an individual was convicted and appealed his conviction under the current version of Section 42.11 after the Supreme Court handed down its opinions in *Johnson* and *Eichman*. *See State v. Jimenez*, 828 S.W.2d 455 (Tex. App.—El Paso 1992, writ ref'd). In *Jimenez*, the El Paso court of appeals, citing *Johnson* and *Eichman*, affirmed the trial court's dismissal without specifying whether the current version of the Texas flag destruction statute was unconstitutional as applied or on its face. *Id.* at 456-57.

Moreover, we have reviewed the cases decided in other jurisdictions since the Court handed down *Eichman* and *Johnson*. Yet we have found no case in which an individual was prosecuted under a flag desecration statute that was determined to be both constitutional on its face and as applied. Although decisions from other state and lower federal courts are not binding on this court, they are nevertheless helpful in analyzing the issue before us.

In *Commonwealth v. Bricker*, a woman was charged with flag desecration for having a dirty, wrinkled American flag inside her apartment with several pairs of shoes placed on top of it. *Bricker*, 666 A.2d at 259. The woman described her use of the flag as "decoration" and denied that she had placed the flag on the floor as part of a "protest" or because she was "mad about anything America was doing." *Id.* Unlike the statutes in *Johnson* and *Eichman*, the Pennsylvania statute exempted from punishment "any patriotic or political demonstration or decorations." *Id.* The Pennsylvania court determined that the woman's display of the flag "as

10

decoration" inside her home was constitutionally protected expression "within the outer perimeters of the First Amendment." *Id.* at 261. The court then determined whether the government's regulation of the woman's conduct was justified. *Id.* at 262. The Commonwealth argued that its interest in regulating the woman's conduct was "to defend the physical integrity of the flag," and "to protect the symbolic value of the flag." *Id.* However, the court rejected this interest as it pertained to the woman's private use of the flag inside her home and held the statute was unconstitutional as applied. *Id.* at 262-63.

In *State v. Janssen*, Wisconsin's flag desecration statute was struck down as being unconstitutionally overbroad because it made it an offense for anyone to "intentionally and publicly mutilate[], defile[], or cast[] contempt upon the flag. . . ." *State v. Janssen*, 580 N.W.2d 260, 261-62 (Wisc. 1998) (citations omitted). The court reasoned that the statute was overbroad because individuals who burned, tore, or cut a flag during a protest, rally, or any other medium to convey a message could be prosecuted for committing a crime. *Id.* at 266. The court further held that the statute's prohibitions would likely "dissuade the citizens of this state from expressing themselves in a constitutionally protected manner." *Id.* at 267.

In *Roe v. Milligan*, the Iowa flag desecration and flag misuse statutes were challenged as being unconstitutional on their face for overbreadth and vagueness. *See Roe*, 479 F.Supp.2d at 1001. The district court declined to strike the statutes as being unconstitutionally overbroad. *Id.* at 1007-08. The court based its reasoning on the assumption that the average citizen "generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution." *Id.* at 1007. As a result, the court determined that such knowledge was sufficient to dispel any possible chilling effect that the statutes may have and that the statutes did not have a "realistic" chilling effect. *See id.* at 1007-08. The court ultimately concluded, however, that the statutes were void for vagueness, and thus, facially unconstitutional. *Id.* at 1014.

3. *Discussion*

The most significant distinction between the previous and current versions of the Texas flag destruction statute is that the current statute does not condition criminal culpability on the actor's intent to offend someone. *See* Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 42.09, 1973 Tex. Gen. Laws 957, *amended by* Act of Aug. 2, 1989, 71st Leg., 1st C.S., ch. 27, § 1, sec. 42.14, 1989 Tex. Gen. Laws 94, renumbered from V.T.C.A., Penal Code § 42.14 by Act

of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 42.11, 1993 Tex. Gen. Laws 3680. By omitting this element, the current statute criminalizes (1) conduct intended and not intended to offend others, (2) conduct intended and not intended to convey a particularized message, and (3) conduct involving the use or treatment of one's personal property in the privacy of one's home. In other words, the statute prohibits all conduct that threatens the physical integrity of a flag. Thus, Section 42.11 criminalizes a substantial amount of constitutionally protected conduct when judged in relation to its legitimate sweep. *See Stevens*, 559 U.S. at 473, 130 S. Ct. at 1587; *Bynum*, 767 S.W.2d at 772. Because of its broad application, we are unable to fashion a reasonable construction of Section 42.11 to render it constitutional. *See Battles*, 45 S.W.3d at 702.

We agree with Appellee that the current statute is similar to the Flag Desecration Act of 1989 that was held unconstitutional as applied to a group of protesters who burned a flag during a political demonstration. *See Eichman*, 496 U.S. at 314, 110 S. Ct. at 2407. Although the Flag Desecration Act of 1989 proscribed conduct "without regard to the actor's motive, his intended message, or the likely effects of his conduct on onlookers," the Court nevertheless concluded that the government's interest was "related 'to the suppression of free expression' . . . and concerned with the content of such expression." *Id.*, 496 U.S. at 315, 110 S. Ct. at 2408 (citations omitted). The Texas flag destruction statute requires the same result. *See* TEX. PENAL CODE ANN. § 42.11(a). The *Eichman* court stated that the government's interest in protecting the physical integrity of a privately owned flag to preserve the flag's status as a symbol would not be diminished, or affect the symbol itself, if the physical manifestation of the symbol was destroyed or disfigured. *See Eichman*, 496 U.S. at 315-16, 110 S. Ct. at 2408. Thus, the Court continued, the government's interest in preserving the flag as a symbol for "national ideals is implicated 'only when a person's treatment of the flag communicates a message' to others that is inconsistent with those ideals." *Id.*, 496 U.S. at 316, 110 S. Ct. at 2408 (citations omitted). *Eichman's* criticisms of the Flag Destruction Act of 1989 are equally applicable to the current version of the Texas flag destruction statute.

The lack of authority relating to the prosecution of individuals under Section 42.11 for flag desecration arguably shows a pattern of nonenforcement. *See Lawrence v. Texas*, 539 U.S. 558, 572, 123 S. Ct. 2472, 2481, 156 L. Ed. 2d 508 (2003) (citing Justice Powell's concurring opinion in *Bowers v. Hardwick*, 478 U.S. 186, 198 n.2, 106 S. Ct. 2841, 2848 n.2, 92 L. Ed. 2d

140 (1986), in which he states that the "history of nonenforcement suggests the moribund character" of sodomy laws). But a lack of challenged convictions (or arrests for that matter) does not disprove that the statute's scope has had a chilling effect on individuals' decisions to engage in what is known as constitutionally protected conduct.

Section 42.11 is not sufficiently narrow to prevent a chilling effect on the exercise of First Amendment freedoms as they relate to conduct involving the flag. *See New York State Club Ass'n, Inc.*, 487 U.S. at 11, 108 S. Ct. at 2233; *Ex parte Ellis*, 309 S.W.3d at 90-91. Even though there appears to be a pattern of nonenforcement of Section 42.11, individuals intending to convey a message by engaging in one of the prohibited acts will nevertheless be subject to arrest and prosecution. The statute, as it currently stands, is unconstitutionally overbroad. *See Snider*, 2012 WL 942082, at \*7 (holding Missouri flag desecration statute unconstitutionally overbroad).[5] Accordingly, we overrule the State's first issue.

## DISPOSITION

Section 42.11 is not unconstitutional as applied to Appellee, but is unconstitutionally overbroad. Accordingly, we *affirm* the trial court's order of dismissal.

**SAM GRIFFITH**
Justice

Opinion delivered December 20, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

---

[5] The Missouri flag desecration statute provides as follows:

1. Any person who purposefully and publicly mutilates, defaces, defiles, tramples upon or otherwise desecrates the national flag of the United States or the state flag of the State of Missouri is guilty of the crime of flag desecration.
2. National flag desecration is a class A misdemeanor.

MO. ANN. STAT. § 578.095 (West, Westlaw through 2013 First Reg. Sess.).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**DECEMBER 20, 2013**

**NO. 12-12-00425-CR**

**THE STATE OF TEXAS,**
Appellant
V.
**TERENCE JOHNSON,**
Appellee

Appeal from the County Court at Law

of Houston County, Texas (Tr.Ct.No. 12-06-00189-CR)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order of dismissal.

It is therefore ORDERED, ADJUDGED and DECREED that the order of dismissal of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*