FILE COPY



# COURT OF CRIMINAL APPEALS

P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

**SHARON KELLER**
PRESIDING JUDGE

**LAWRENCE E. MEYERS**
**CHERYL JOHNSON**
**MIKE KEASLER**
**BARBARA P. HERVEY**
**ELSA ALCALA**
**BERT RICHARDSON**
**KEVIN P. YEARY**
**DAVID NEWELL**
JUDGES

**ABEL ACOSTA**
CLERK
(512) 463-1551

**SIAN SCHILHAB**
GENERAL COUNSEL
(512) 463-1597

FILED IN COURT OF APPEALS
12th Court of Appeals District

**OCT 13 2015**

TYLER TEXAS
PAM ESTES, CLERK

October 12, 2015

Cathy Lusk
12th Court Of Appeals Clerk
1517 W. Front, Room 354
Tyler, TX 75701
\* DELIVERED VIA E-MAIL \*

Joshua Thomas Liles
800 N. Mallard St.
Palestine, TX 75801
\* DELIVERED VIA E-MAIL \*

County Attorney
Houston County
100 N 6th
Crockett, TX 75835

Amber N. Bewley
Assistant County Attorney
401 E. Houston Ave., 2nd Floor
Crockett, TX 75835
\* DELIVERED VIA E-MAIL \*

District Clerk Houston County
Carolyn Rains
PO Box 1186
Crockett, TX 75835
\* DELIVERED VIA E-MAIL \*

**Re: STATE vs. JOHNSON, TERENCE**
**CCA No. PD-0228-14**
**Trial Court Case No. 12-06-00189-CR**

**COA No. 12-12-00425-CR**

Judge Yeary's dissenting opinion has been corrected. Page 16, Continuation of Footnote 8 from page 15, on line 11 of the footnote on page 16 should read: "would never have been enforced in a manner inconsistent with the First Amendment and would".

Sincerely,

Abel Acosta, Clerk

FILED IN 12th COURT OF APPEALS
12th Court of Appeals District

TYLER TEXAS
PAM ESTES, CLERK



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0228-14

### THE STATE OF TEXAS

v.

### TERENCE JOHNSON, Appellee

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE TWELFTH COURT OF APPEALS HOUSTON COUNTY

**YEARY, J., filed a dissenting opinion.**

## DISSENTING OPINION

Today, the Court declares Texas' destruction of a flag statute facially unconstitutional.

Six members of this Court undo the considered work of our State's House of Representatives, our Senate, and our Governor.[1] Having determined that the law is drawn in

---

[1] The former version of Penal Code Section 42.11, entitled "Desecration of a Venerated Object," was repealed after the United States Supreme Court found it had been applied unconstitutionally against a protester in *Texas v. Johnson*. 491 U.S. 397 (1989). In an attempt to cure potential constitutional problems with that law, the Legislature enacted the statute at issue in this case.

violation of the First Amendment, the Court's opinion means that this penal law may no longer be enforced against anyone, no matter what the circumstances—ever. This is a powerful rebuke to the people's representatives! I do not join it.

To be clear, I do not today contest the opinions of the United States Supreme Court, which have determined that laws similar to the one at issue here are capable of being applied in a manner that is inconsistent with the guarantees of the First Amendment. *See, e.g., Texas v. Johnson*, 491 U.S. 397 (1989) (finding that the former version of Texas' destruction of a flag statute was applied unconstitutionally); *United States v. Eichman*, 496 U.S. 310 (1990) (finding that the Flag Protection Act of 1989 had been applied unconstitutionally). But this Court's opinion does not limit itself to a conclusion that the statute has been *applied* unconstitutionally against Appellee. It can't! The statute most certainly was applied constitutionally under the circumstances presented here.[2]

Instead of assessing whether the statute was applied unconstitutionally in this case, the Court avoids that question and finds that the statute facially conflicts with the First Amendment due to its substantial overbreadth. In reaching that conclusion, the Court goes where no United States Supreme Court opinion has gone before it. Twice before, in *Texas*

---

[2] The majority suggests that whether the statute was applied constitutionally in this case is not self-evident. Majority Opinion at 4 n.5. But the court of appeals resolved this question. *State v. Johnson*, 425 S.W.3d 542, 549 (Tex. App.—Tyler 2014) (explaining, "we conclude that Appellee's conduct was not 'sufficiently imbued with elements of communication' to implicate the First and Fourteenth Amendments," and "[t]he record before us shows that Appellee engaged in an act of criminal mischief with no intent to convey any particularized message."). As the majority correctly notes, Appellee did not challenge that determination. Consequently, this Court should regard the court of appeals resolution of that issue as conclusive.

*v. Johnson* and again in *United States v. Eichman*, the United States Supreme Court has found statutes regulating the destruction or desecration of flags to have been unconstitutionally applied. *Johnson*, 491 U.S. at 404 n.3 (explaining that the Court intentionally chose to resolve this case only "on the basis of his claim that the statute as applied to him violates the First Amendment"); *Eichman*, 496 U.S. at 312 (concluding that the federal Flag Protection Act "cannot constitutionally be applied to appellees"). But the Supreme Court has never, to my knowledge, found such a statute to be facially unconstitutional. Instead, it has declined to make that kind of an expansive ruling, even explaining at one point, "[w]e have not automatically concluded . . . that any action taken with respect to our flag is expressive." *Johnson*, 491 U.S. at 405.

I am persuaded that, in reaching the conclusion that the Texas destruction of a flag statute is facially unconstitutional, the Court has made two important mistakes. First, I am persuaded that the Court has made a mistake in concluding that it (the Texas Court of Criminal Appeals) has both the power and the constitutional obligation, mandated by no less than the First Amendment itself, to decide that the destruction of a flag statute is facially unconstitutional *in this case*, even though the defendant cannot show the statute was unconstitutionally applied to him and to his own conduct. Second, I am persuaded that the Court has mistakenly concluded that the statute at issue here is substantially overbroad in relation to its otherwise plainly legitimate sweep, when it is not. For these two reasons, as more fully explained in this opinion, I respectfully dissent.

## AUTHORITY TO DECIDE THE CASE

The majority concludes in this case that Texas courts are bound—by no less than the First Amendment itself—to review Appellee's claim that the statute is unconstitutional because it violates the First Amendment, regardless of whether he can show that his own First Amendment rights have been violated. I disagree. I believe Appellee's complaint that the statute under which he was charged violates the First Amendment should have been rejected because he cannot show that his own First Amendment rights have been violated. For reasons grounded in the Texas Constitution and in Texas law, I believe we should find that we and the other courts in our state are not authorized to address challenges to the constitutionality of statutes—even in cases alleging First Amendment overbreadth—brought by claimants who cannot show that the statute operated unconstitutionally in their own cases.

I must address my thoughts on this matter in two parts. First, I will explain why I believe Texas does indeed have the discretion to apply a stricter standard than the standard employed by the federal courts when assessing which litigants have standing to bring an overbreadth claim in our state courts. Second, I will explain why I believe our authority to address overbreadth claims is more limited than the authority of the federal courts.

### A.    State Discretion to Restrict Standing for Overbreadth Claims

The United States Supreme Court observed, in *Virginia v. Hicks*, that "[w]hether Virgina's courts should have *entertained* [an] overbreadth challenge is entirely a matter of state law." 539 U.S. 113, 120 (2003) (emphasis in original). At the same time, the Court also

observed a distinction between: (1) questions about whether the state courts "should have entertained" the challenge brought by Hicks, and (2) questions about "whether the claimed overbreadth [of the] policy [at issue] [was] sufficiently 'substantial' to produce facial invalidity." *Id.* Speaking of the latter (whether the claimed overbreadth was sufficiently substantial), the Court explained, "These questions involve not standing, but 'the determination of [a] First Amendment challenge *on the merits*.'" *Id.* (quoting from *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 958-959 (1984)) (emphasis added). Thus, the Supreme Court acknowledged a distinction between the issue of standing in an overbreadth challenge and the merits of a First Amendment overbreadth issue, which requires a determination about whether the overbreadth of a statute is sufficiently substantial to justify declaring the statute facially unconstitutional.

The Supreme Court of Utah appears to agree with the proposition that standing, as opposed to the merits of an overbreadth claim, is a state law matter. In *Provo City Corporation v. Willden*, that Court observed, "the federal rules on standing . . . are not binding on state courts, and the article III constitutional restrictions and federalistic prudential considerations that have guided the evolution of federal court standing law are not necessarily relevant to the development of the standing rules that apply in Utah's state courts." 768 P.2d 455, 456 (Utah 1989). The authors of Corpus Juris Secundum also seem to agree. Relying on *Virginia v. Hicks*, that authority has explained, "[s]tate courts are not

bound by federal rules of justiciability, even when they address issues of federal law." 21 Corpus Juris Secundum *Courts* § 217, at p. 215 (2006).[3]

The majority seems to believe that the relaxed standing requirement applied by the federal courts in First Amendment overbreadth cases is a part of the substantive guarantee of the First Amendment, which the states are not free to avoid. Majority Opinion at 7-12.[4] I disagree. Limiting consideration of First Amendment overbreadth claims to those litigants who can demonstrate that their own constitutional rights have been violated would not mean that this Court would ignore the application of the substantive rule enforced through the First Amendment overbreadth doctrine. The substantive aspect of that doctrine requires invalidation of a law when it is shown that the overbreadth of the law is substantial in relation to its otherwise legitimate sweep. *See Hicks*, 539 U.S. at 120 (explaining, "whether the claimed overbreadth [of a] policy [at issue] is sufficiently 'substantial' to produce facial invalidity," is the question that guides "the determination of [a] First Amendment challenge on the merits."). That substantive "merits" element of a First Amendment overbreadth challenge establishes a diminished burden from the burden that is applicable in ordinary

---

[3] *See also* Adam M. Samaha, <u>Litigant Sensitivity in First Amendment Law</u>, 98 Nw. U.L. Rev. 1291, 1292 (Summer 2004) ("State and federal courts must abide by the same First Amendment law, but they need not use the same rules for standing. Different judiciaries might now provide overbreadth challenges to different categories of litigants.").

[4] The majority argues: "Judge Yeary's dissent suggests that, as a matter of state law, we might be free to refuse to entertain overbreadth claims." Majority Opinion at 7. But the majority is mistaken. I do not believe we are free to refuse to entertain overbreadth claims generally. I do believe we ought to refuse to address them when they are presented by individuals who have suffered no constitutional deprivation.

constitutionality challenges, which commands that a statue will not be declared unconstitutional unless it is shown that it is unconstitutional in *all* of its applications. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (explaining, "the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice," and "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."). *Compare Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that, in most cases in which a defendant seeks a declaration that a statute is facially unconstitutional, the Supreme Court requires a demonstration that the statute operates unconstitutionally in *all* of its applications), *with United States v. Salerno*, 481 U.S. 739, 745 (1987) (explaining that a "challenger must establish that no set of circumstances exists under which the Act would be valid").

The majority correctly observes that the Virginia Supreme Court has addressed and rejected my conclusion that *Virginia v. Hick* stands for the proposition that who may bring a facial challenge alleging overbreadth is a matter of state law. Majority Opinion at 10-11; *see also Jaynes v. Commonwealth*, 666 S.E.2d 303, 308 (2008). In *Jaynes*, the Virginia Supreme Court concluded, "the opinion of the United States Supreme Court in [*Virginia v. Hicks*] addressed the issue of First Amendment standing only in the context by which that issue was placed before the Court: whether a state's *expansion* of First Amendment standing was subject to review by federal courts." *Jaynes*, 666 S.E.2d at 310. Thus, that court

concluded, "the seemingly broad language about standing in the [*Virginia v. Hicks*] opinion cannot have the meaning now espoused by the Commonwealth." *Id.*

Ah, but can it? I believe that it can. I believe it does, and I believe the Supreme Court of Virginia probably reached the wrong conclusion because it made the same mistake this Court makes in failing to perceive a difference between the two aspects of the overbreadth doctrine applied by the United States Supreme Court; both courts (this Court and the Virginia Supreme Court) fail to distinguish between the standing aspect of the Supreme Court's overbreadth doctrine and the aspect of its doctrine that addresses the merits of the constitutionality question: whether a statute's overbreadth is sufficiently substantial to find that it violates the First Amendment.

The majority points to some United States Supreme Court cases that recite, in various ways, a rule that I do not contest. Those cases stand merely for the indisputable proposition that the overbreadth doctrine itself is a function of substantive First Amendment law.[5] Unlike the majority, however, I recognize a difference between the "standing" element employed by the United States Supreme Court, to decide which litigants are permitted to bring a First Amendment overbreadth claim in federal court, and the substantive element of such a claim that requires measuring the substantiality of the statute's overbreadth to determine whether

---

[5] The majority cites and relies on cases that support this general proposition, such as: *Sabri v. United States*, 541 U.S. 600, 610 (2004), *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 958-959 (1984), and *New York v. Ferber*, 458 U.S. 747, 767 (1982). Majority Opinion at 8 & n.27.

the statute is facially unconstitutional. It is the measurement of the statute's overbreadth that addresses the merits-based element of an overbreadth claim.

The majority also sets up a false comparison between claims brought by litigants asserting First Amendment overbreadth and claims brought by litigants asserting Fourth Amendment expectation-of-privacy issues. The majority observes that the latter issues (involving the Fourth Amendment) can also be characterized as involving "standing," but are more accurately viewed as part of substantive Fourth Amendment law. To support that proposition, the majority quotes from *Rakas v. Illinois*, 439 U.S. 128, 139-140 (1978), in which the United States Supreme Court explained that "Fourth Amendment rights are personal in nature" and that the "definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." But the issue of standing in First Amendment overbreadth cases is distinct from the conclusion that Fourth Amendment rights themselves are only personal rights.

The majority observes that "[n]o one would claim . . . that a state court can decline to entertain the Fourth Amendment claim of an overnight guest on the ground that overnight guests simply do not have standing in state court under state law." Majority Opinion at 12. I agree. But that is because standing in that sense, under the Fourth Amendment, addresses not whether the claimant has a sufficient *personal interest* to bring the claim at all, but rather, whether the claimant has a sufficient *privacy interest* in the place searched to invoke Fourth

Amendment protection. The issue of standing in a Fourth Amendment case goes directly to whether the claimant's own *personal* Fourth Amendment right has been violated.

It is also important to recognize that the Supreme Court has not invoked prudential considerations to expand the concept of Fourth Amendment standing as it has in First Amendment overbreadth cases. If it ever did, I might disagree with the majority about Fourth Amendment standing. I believe we might indeed then—properly—question our right to entertain a Fourth Amendment claim brought by one claimant based only on the invasion of another person's rights, even if the United States Supreme Court sanctioned it.

*Rakas* is also inapposite to the issue I have addressed. In *Rakas*, the Supreme Court was faced with a request to *expand* its traditional rules of standing in Fourth Amendment cases to allow criminal defendants to assert the Fourth Amendment rights of others when seeking to exclude evidence from their trials. 439 U.S. at 129-130. The Supreme Court declined that request. *Id.* at 150. Here, in contrast, the Supreme Court has already expanded its traditional rules of standing. I question only whether the sources of law that animate or restrain our authority permit us to follow their lead. The Court in *Rakas* described, "misgivings as to the benefit of enlarging the class of persons who may invoke the [exclusionary rule]" as a prudential consideration. *Rakas*, 439 U.S. at 138. To the degree that expansion of traditional standing rules involves merely "prudential" considerations, even when the expansion is sanctioned by the United States Supreme Court, the standing rules at issue are no longer rooted in the substantive guarantees of the First Amendment.

I believe that the question of whether the Texas Court of Criminal Appeals must entertain a First Amendment overbreadth claim by a person who cannot demonstrate first that his own constitutional rights have been violated is a matter of state law. I do not believe that the relaxed standing requirement employed by the United States Supreme Court for overbreadth claims is a substantive guarantee of the First Amendment. The Supreme Court of the United States may no more compel this Court to hear such a claim by such a person than it may compel this Court to entertain discretionary review in civil cases. Prior to this time, I would have thought that the latter issue (that Supreme Court could never compel us to hear civil cases because our state constitution forbids it) to be beyond dispute. *Compare* TEX. CONST. ART. V, § 3 (jurisdiction of the Texas Supreme Court) *with* TEX. CONST. ART. V, § 5(a) (jurisdiction of the Texas Court of Criminal Appeals).

**B.     Texas law limits this Court's authority to address overbreadth claims**

Having concluded that the standing element of an overbreadth claim is a matter of state law, I next address whether there are reasons why this Court should refuse to adopt the Supreme Court's relaxed standing requirements for overbreadth cases. I conclude we should not relax the standing requirements in Texas.

The Supreme Court of the United States derives its authority from Article III of the United States Constitution, which limits its jurisdiction to "cases" and "controversies."[6] That Court explains that the doctrine of "standing" is a landmark that serves to identify which cases will satisfy the Constitution's case and controversy requirement. *See Lujan v.*

---

[6] U.S. CONST. ART. III § 2 (extending "judicial power" to "cases" and "controversies").

*Defenders of Wildlife*, 504 U.S. 555, 559-562 (1992). But "standing," the Court has explained, has two strands: (1) Article III standing and (2) prudential standing. *See Elk Grove Unified Sch. Dist. V. Newdow*, 542 U.S. 1, 11 (2004). Both are founded on concerns "about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

To establish Article III standing, a claimant in federal court must show an "injury-in-fact" which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). However, the Supreme Court has also "adverted to a prudential branch of standing, a doctrine not derived from Article III and not exhaustively defined but encompassing . . . at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (internal quotation marks omitted). These "broad principles," which animate the federal court's "prudential branch of standing," appear to me to be related more to the doctrine of separation of powers than to the Article III constitutional limitation of the federal courts' authority to the determination of cases and controversies. *Cf. id.* (explaining, "From Article III's limitation of the judicial power to resolving Cases and Controversies, and the separation-of-

powers principles underlying that limitation, we have deduced a set of requirements that together make up the irreducible constitutional minimum of standing.") (internal quotation marks omitted).

The United States Constitution does not expressly require that the powers of the three branches of the federal government be separated. It is the United States Supreme Court that has judicially enforced the federal doctrine of the separation of powers. *See Miller v. French*, 530 U.S. 327, 341 (2000) (explaining, "[t]he Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, and it is this very structure of the Constitution that exemplifies the concept of separation of powers.") (internal quotation marks omitted). The Texas Constitution, in clear contrast, mandates in plain language—appearing in the Constitution itself—that the "powers of the Government . . . shall be divided."[7] The fact that separation of powers in Texas is not just a judicially observed phenomenon, but a distinct, overt, and clearly stated constitutional mandate indicates to me that our courts might have less discretion in defining the parameters of that doctrine for our State than does the United States Supreme Court when it comes to its federal judicially made separation of powers doctrine.

---

[7] TEX. CONST. ART. II, § 1 (providing the following: "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.")

In fact, the author of today's majority opinion once wrote, "this Court has enforced the doctrine of separation of powers more aggressively than the United States Supreme Court has." *State v. Rhine*, 297 S.W.3d 301, 317 (Tex. Crim. App. 2009) (Keller, P.J., concurring, in which Meyers, Hervey, and Holcomb, JJ., joined). Perhaps that is because our Texas constitutional mandate that the powers of government remain separated is less subject to our own independent interpretation than is the federal—court made—doctrine of separation of powers. We should consider more seriously, then, whether the Texas Constitution's prohibition on actions by the Judiciary that invade the province of the Legislature might impede our authority to execute the United States Supreme Court's overbreadth doctrine in the exact same manner as it is executed by that Court. And, consequently, I believe we should consider whether we may permit Appellee in this case to claim—in state court—that the statute under which he was convicted is unconstitutional in the absence of a showing that his own constitutional rights have been violated.

Up to this point in time, this Court has simply *assumed* that it has the same authority as the United States Supreme Court to disregard traditional notions of standing (or to alter them) to address facial-overbreadth constitutional challenges in the area of the First Amendment, regardless of a showing by the complaining party that his own constitutional rights have been violated. But we might not have the authority to do that, and we ought not simply to presume that we do without at least considering the matter with some skepticism. It is simply not enough to conclude that, because United States Supreme Court has that

power, we must have it as well. It would also be a mistake to conclude that the United States Supreme Court has the power to confer or even mandate jurisdiction or power to act upon this Court where the Texas Constitution and the Texas Legislature have not done so first. The Court of Criminal Appeals is not merely a subsidiary of the United States Supreme Court, or just a lesser federal court, even when it comes to questions of federal constitutional law.

For a court to judge a law to be substantially overbroad in violation of the First Amendment, prohibiting its future enforcement certainly frees the public from concern that it might be enforced against them should they choose to communicate in a manner appearing to conflict with the terms of the law. It is also beyond dispute that the First Amendment needs "breathing space," and a statute that is unconstitutionally overbroad in violation of the First Amendment may have the effect of chilling some protected expression until it is declared unconstitutional. But when a court judges a statute's potential unconstitutional breadth without the benefit of a case in which its unconstitutional breadth has actually become known by application, the court risks entering into the realm of speculation and conjecture; its speculations and conjectures about the manners in which the law might be enforced may fail to accord appropriate latitude to the other two branches of government charged with upholding the constitution. To do so may also improperly invade the provinces that are proper *only* to the other branches of government.[8]

---

[8] To be sure, there have been times in history when the courts have been more quick than other branches of government to address unconstitutional laws that were popular, such as when the courts addressed the Jim Crow laws. But in a rush to declare statutes facially unconstitutional to protect the public from what *we judges* consider to be overbroad laws, we might also on occasion forget that we live in a somewhat cloistered world. We basically talk to ourselves, and our staff, and

The majority's decision in this case, to me, bears a striking resemblance to legislative action. Here, an individual who was not unconstitutionally affected by the destruction of a flag law at issue has, in effect, asked this Court to repeal the statute under which he was properly and constitutionally charged and convicted, not because his own constitutional rights were violated, but because the statute might be unconstitutionally applied against others, in the future, who are not before the Court today. This Court has obliged his request.[9] In doing so, we have arguably engaged in a function that should be reserved to the legislative branch of our State's government. Certainly, we would not have obliged his request, and neither would the United States Supreme Court, if he had challenged the statute under any theory other than that it violated the First Amendment.

perhaps we read a book from time to time. The other two branches of government have far greater input on matters that directly affect the public than we do. The executive and legislative branches of government naturally have opportunities to access and interact both with those officials who apply our laws and with the citizens who are most directly affected by them. We in the judiciary have nowhere near the same level of contact with the thoughts and opinions of real people. This cloistering that affects the judiciary unlike the other branches of government puts us at a disadvantage when measuring the true breadth of any law passed by the Legislature and approved by the Governor. It also raises the specter that the court might, being called upon to speculate about the possible applications of a law, declare a statute unconstitutionally overbroad—a statute that would never have been enforced in a manner inconsistent with the First Amendment and would never have been understood by ordinary citizens to reach constitutionally protected expression—by imagining a perfectly fine law into a dangerous monster that threatens the very fabric of our nation. We should guard ourselves against that.

[9] Allowing a litigant to bring a claim in our state courts that a statute is unconstitutional when he cannot show that it was unconstitutionally applied to him in his own case also invites us to assume the power to issue advisory opinions. But we are without power to do that. *See Pfeiffer v. State*, 363 S.W.3d 594, 600 (Tex. Crim. App. 2012) (observing that this Court is "without authority" to render advisory opinions). In fact, as this Court has held before, "[i]t is well-established that this Court is without constitutional or statutory authority to . . . render advisory opinions, except" for when we are answering questions certified to us by a federal court. *Ex parte Ruiz*, 750 S.W.2d 217, 218 (Tex. Crim. App. 1988).

Consistent with the requirement that a claimant demonstrate standing before being allowed to advance a claim, the Supreme Court ordinarily requires adherence to the rule that, "a person to whom a statute may constitutionally be applied will not be heard to challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. at 610. That Court has apparently relied on "prudential" considerations to relax this ordinary rule of standing in cases alleging First Amendment overbreadth. However, I do not believe that we in Texas are free to interpret our constitutionally mandated separation of powers provision as liberally as the United States Supreme Court has interpreted its own court-made federal doctrine of separation of powers, pursuant to merely "prudential" considerations. Consequently, in this case, because Appellee cannot show that his own First Amendment rights have been violated, I would conclude Appellee's claim—that the Texas destruction-of-a-flag statute is facially unconstitutional—is barred. *Cf. Hollingsworth v. Perry*, 133 S.C. 2652, 2659 (2013) (explaining that when a claimant in federal court cannot establish standing to bring a claim, the federal courts "have no authority to decide [a] case").

## THE COURT MISAPPLIES OVERBREADTH

Even assuming that we are authorized to address the facial constitutionality of the destruction of a flag statute in spite of Appellee's failure to demonstrate that the statute is unconstitutional as applied to his own conduct, I still have serious concerns that Appellee has failed to meet the bare requirements of the overbreadth doctrine, even as that doctrine has

been applied by the United States Supreme Court. In *Broadrick*, the United States Supreme Court explained, "where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, at 615. There is no question that the destruction of a flag statute addresses conduct. The majority even acknowledges that "the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive." Majority Opinion at 20 & n.74; *see also Johnson*, 491 U.S. at 403 n.3. As a matter of fact, the only way that the destruction of a flag statute can ever be applied to expressive conduct is if an actor violates the statute with the additional self-initiated intent (not described in the statute) to express some message. But the statute itself makes no reference to this additional self-initiated intent.

In isolation, then, the destruction of a flag statute is a pure conduct regulation. In that regard, it is really no different than our laws prohibiting disorderly conduct. *See* TEX. PEN. CODE § 42.01 (providing that a person commits an offense if, among other things, the person intentionally or knowingly "(3) creates, by chemical means, a noxious and unreasonable odor in a public place;" or "(5) makes an unreasonable noise in a public place . . . or in or near a private residence that he has no right to occupy"). Like the destruction of a flag statute, the disorderly conduct statute prohibits pure conduct. It is only when a discrete individual

violates these laws with the additional self-initiated intent to communicate a message that any potential violation of the First Amendment—even arguably—might occur.[10]

In many respects, the law at issue here is also comparable to the law at issue in *Virginia v. Hicks*. The Supreme Court explained that Hicks "was not arrested for leafleting or demonstrating without permission," but rather, "[h]e violated [a] written rule that persons who receive a barment notice must not return to the [Richmond Redevelopment and Housing Authority] property." *Hicks*, 539 U.S. at 121. The Court explained, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.' [citation omitted]. For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, *or especially to constitutionally unprotected conduct*." *Id.* at 119 (first emphasis in the original; second emphasis added).

It seems to me that a determination that a statute is unconstitutional on its face should not be entirely dependent on the motivations of individual violators who attack it. At that point, we are no longer truly addressing the facial constitutionality of the law itself, but the mere constitutionality of the application of the law against the individuals who violate it with

---

[10] The Texas Penal Code contains a defense to prosecution for cases in which a defendant engages in conduct that would violate Section 42.01(a)(5) whenever that conduct "consists of speech or other communication," unless the defendant has disobeyed a reasonable order "to move, disperse, or otherwise remedy the violation prior to his arrest[.]" TEX. PENAL CODE § 42.04(a), (c).

an additional self-initiated intent to communicate a message.

The outer boundaries and reach of the overbreadth doctrine have not yet been defined by the United States Supreme Court. We know that before a court may strike down a law "where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, at 615. But what constitutes "substantial . . . in relation to . . . [its] plainly legitimate sweep"? An easy argument can be made that it means the statute prohibits a lot of protected speech! But the majority observes in this case only that it is "clear that the Texas flag destruction statute violates the First Amendment when applied to *some circumstances*." Majority Opinion at 20 (emphasis added). The majority also concedes that there are at least two types of situations that might involve permissible applications of the law. Majority Opinion at 24-25. The majority then concludes that "[m]ost conduct that falls within the provisions of the statute and that would come to the attention of the authorities would constitute protected expression." Majority Opinion at 25. But that conclusion can only be drawn with reference to choices made outside of the parameters of the language of the statute itself—and with a reference to choices made by actors who use the violation of this pure conduct-regulating statute to accomplish their own purposes.

What is certain is that the overbreadth doctrine, as it is currently enforced by the Supreme Court, requires an examination of the *statute* itself, and not merely the potential or hypothetical First Amendment uses that violators of the statute might intend for it by their

acts taken in violation of its provisions. *United States v. Stevens*, 559 U.S. 460, 485 (2010) (explaining, "we have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating from the text of [the law] and from actual fact, that substantial overbreadth exists.") (internal quotation marks omitted). The Supreme Court explains the doctrine this way: "the overbreadth of *a statute* must not only be real, but substantial[.]" *Broadrick*, at 615 (emphasis added). Even the Supreme Court acknowledges that "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law." *Hicks*, 539 U.S. at 119. That point might be where the language of the statute on its face fails to implicate any kind of communicative efforts, and where the only way the statute might prohibit First Amendment protected messages is if the conduct is intended for that purpose solely by the actor. *See Broadrick*, 413 U.S. at 615 (explaining, "facial overbreadth adjudication . . . attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct").

This Court has not been asked to consider here, and it does not address, whether the flag destruction statute might be unconstitutionally vague or whether it might operate unconstitutionally for any other reason, such as in violation of a right to liberty generally. The Court's limitation of its opinion to the issue actually presented is, I believe, appropriate. Such questions should be reserved for cases in which those issues are clearly before us.

## CONCLUSION

Appellee in this case has failed to demonstrate that his own conduct—that violated the provisions of the destruction of a flag statute—was protected by the First Amendment. In cases where the destruction of a flag statute operates unconstitutionally in violation of an individual's First Amendment rights *as applied*, I would agree that such an individual would deserve relief.[11] Under the circumstances presented here, I cannot agree.

FILED:        October 7, 2015
PUBLISH

---

[11] It seems to me that the chances that law enforcement officials would attempt to apply this statute against an individual in violation of the First Amendment as construed by the United States Supreme Court have been substantially diminished as a result of that Court's opinions in *Texas v. Johnson* and *United States v. Eichman*. The constitutional right to burn and/or otherwise destroy the flag of the United States is now well and broadly known to the people of this country and beyond. I would be surprised if even people commonly interviewed by Jesse Watters (host of Watters' World on the television show The O'Reilly Factor) would not know that the Supreme Court has protected their right to express dissatisfaction by destroying the flag. In fact—perhaps because of those opinions—flag burning and flag destruction appear to have become somewhat of a rite of passage and even a badge of honor for domestic protesters of federal legislative and executive actions. It is incredibly common today to hear stories of people dishonoring this revered symbol of our nation. What has become much less common and almost non-existent since the United States Supreme Court opinions in *Johnson* and *Eichman* is stories of people being arrested and prosecuted for destroying a flag in the exercise of their First Amendment right of free speech. Consequently, the urgency of striking down this law, even if its language does allow for the potential to reach *some* constitutionally protected speech, is diminished as well.